S94A0791. GRACE BROTHERS, LTD. et al. v. FARLEY
INDUSTRIES, INC. et al.
S94A0792. LANIER v. FARLEY INDUSTRIES, INC. et al.
(450 SE2d 814)

THOMPSON, Justice.

William Farley, and entities associated with him, made a tender offer of $58 per share for all of the outstanding common stock of West Point Pepperell ("WPP").[1] The offer was approved by WPP's board of directors and 95 percent of WPP's stock was tendered to Farley.

The tender offer negotiations led to a merger agreement in which West Point Acquisition Corporation and WPP agreed to use their best efforts to merge West Point Tender Corporation and WPP. The agreement provided that the remaining shareholders of WPP (holding five percent of the outstanding common stock) would be paid the tender offer price of $58 per share when the merger was complete.

Approximately two years later, Farley announced that the merger could not be completed because of various financial setbacks and the parties formally terminated the merger agreement. Farley's financial troubles continued and a reorganization plan was contemplated. At that point, Joseph L. Lanier, Jr.,[2] Grace Brothers, Ltd.,[3] and Kidder

---

[1] Farley used a number of companies, including Farley Industries, Inc., West Point Tender Corporation and West Point Acquisition Corporation (now called Valley Fashions Corporation), to purchase WPP. They are referred to collectively, as "Farley."

[2] At the time of the tender offer, Lanier was president and CEO of WPP. He owned approximately 22,000 shares of WPP stock. He did not tender his shares pursuant to the Farley tender offer.

Peabody & Co., Inc.,[4] brought suit against Farley, WPP and officers and directors of WPP. In their complaint, as amended, plaintiffs asserted multiple claims directly (i.e., individually) and derivatively. They sought specific performance, or, alternatively, damages for breach of the merger agreement. They also sought damages for interference with the merger agreement, breach of fiduciary duty, unjust enrichment, corporate waste and violations of the Fair Price Requirements Act.

While the litigation was pending, Farley announced plans to complete the merger and force the cash-out of the minority shareholders at $46 per share. Plaintiffs tried to enjoin the merger, alleging Farley failed to comply with procedural requirements and that the proxy statement contained material misstatements. The court refused to grant injunctive relief.

Defendants moved to dismiss on the ground that plaintiffs lacked standing to assert their claims, and for summary judgment. The court granted defendants' motions and entered final judgment in their favor. Plaintiffs brought this appeal and sought a stay of the merger pending appeal. The trial court refused to grant a stay. This court likewise refused to stay the merger pending appeal.

In December 1993, the merger was completed and WPP became West Point Stevens. Pursuant to the merger, minority shareholders are to receive $46 per share. Kidder Peabody & Co., Inc., and Grace Brothers, Ltd., accepted the $46 per share merger price and tendered their WPP stock. Lanier dissented from the merger and pursued the statutory appraisal process. See OCGA § 14-2-1301 et seq.

1. Plaintiffs' assertion that they can maintain their claims derivatively must fail. The law is well settled that a former shareholder in a merged corporation has no standing to maintain a shareholder's derivative action. *Scattergood v. Perelman*, 945 F2d 618 (3rd Cir. 1991); *Portnoy v. Kawecki Berylco Indus.*, 607 F2d 765, 767 (7th Cir. 1979). After all, the "commenced or maintained" language in the shareholders' derivative statute, OCGA § 14-2-741, requires a continuation of shareholder status throughout litigation, *Schilling v. Belcher*, 582 F2d 995, 1002 (5th Cir. 1978), and that status comes to an end with a corporate merger. *Scattergood v. Perelman*, supra; *Portnoy v. Kawecki Berylco Indus.*, supra. See also *U. S. Fidelity &c. Co. v. Griffin*, 541 NE2d 553, 555 (Ind. App. 1989); *Lewis v. Anderson*, 477 A2d 1040, 1047 (Del. 1984).

---

[3] Grace Brothers, Ltd., did not own any WPP stock at the time of the tender offer. It began acquiring WPP stock after it was announced that the merger would not be completed.

[4] Kidder Peabody & Co., Inc. owned 4,347 shares of WPP when it was announced that the merger would not take place. Thereafter, it purchased more than 120,000 additional shares of WPP stock.

2. Plaintiffs assert they have standing to bring their claims against defendants directly. In *Thomas v. Dickson*, 250 Ga. 772, 774 (301 SE2d 49) (1983), this court recognized the general rule that "a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit. [Cits.]" Nevertheless, we permitted the minority shareholder of a close corporation to bring a direct action against the majority shareholders for misappropriation of corporate funds because exceptional circumstances were present. Id. In so doing, we assumed, without deciding, that the misappropriation of corporate funds was primarily of a derivative nature and not a "direct injury." Id. at 774, n. 1. Thus, we reserved the question of whether a direct action was available to a shareholder who suffers a "direct injury."

In *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584 (397 SE2d 699) (1990), we observed that, under Delaware law,[5] a shareholder can maintain a direct action if he alleges a "special injury," i.e., an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation. Id. at 586. This standard was applied by the Court of Appeals in *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 797 (432 SE2d 238) (1993), and is generally recognized as the test that distinguishes derivative from direct claims. See *In re Tri-Star Pictures*, 634 A2d 319, 330 (Del. 1993); Fletcher Cyc. Corp., § 5921 (Perm. Ed.). We adopt this test and hold that, outside the context of a close corporation,[6] a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action.

One of plaintiffs' claims — that defendants breached their fiduciary duty to minority shareholders by failing to seek consummation of the original merger agreement[7] — meets this test. That claim asserts an injury separate and distinct from any injury to the corporation or the majority shareholders because only the minority shareholders stood to receive $58 per share upon consummation of the merger agreement.[8]

---

[5] See *Phoenix Airline Svcs. v. Metro Airlines*, 194 Ga. App. 120, 123 (390 SE2d 219) (1989).

[6] In the 1988 revision of the Georgia Corporation Code the legislature expressly authorized a shareholder in a "statutory close corporation" to petition the superior court for relief, including the awarding of damages to any aggrieved party, if the directors "have acted, are acting, or will act in a manner that is illegal, oppressive, fraudulent, or unfairly prejudicial to the petitioner, whether in his capacity as shareholder, director, or officer of the corporation." OCGA §§ 14-2-940 (a) (1); 14-2-941 (a).

[7] See generally *Comolli v. Comolli*, 241 Ga. 471, 473-475 (246 SE2d 278) (1978) (directors have duty to treat minority shareholders fairly).

[8] Plaintiffs cannot maintain this direct claim, however, because the statutory appraisal

> Where, as here, it is sufficiently alleged that the effect of the controlling stockholders self-serving manipulation of corporate affairs causes a singular economic injury to minority interests alone, the minority have stated a cause of action for "special" injury . . . .

*In re Tri-Star Pictures,* supra at 332.

Plaintiffs' other claims are founded upon injuries which are no different from that suffered by the corporation or the other shareholders.[9] It follows that the remainder of plaintiffs' direct claims cannot be sustained because they are, in the final analysis, derivative claims.[10] See generally *Pickett v. Paine,* 230 Ga. 786, 790 (199 SE2d 223) (1973).

Plaintiffs erroneously assert that they are entitled to bring direct claims for breach of the merger agreement because they are third-party beneficiaries of the agreement. Section 9.08 of the agreement expressly states that "nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies of any nature whatsoever under or by reason of this Agreement. . . ." Thus, a plain reading of the merger agreement demonstrates that the parties did not intend to confer third-party beneficiary status on anyone. See *Miree v. United States,* 242 Ga. 126, 135 (249 SE2d 573) (1978) (third party does not have standing to enforce contract unless it clearly appears from the contract that it was intended for his benefit).

3. The statutory appraisal remedy is exclusive. OCGA § 14-2-1302 (b); Comment, Note to 1989 Amendment. The only exceptions to the exclusivity of appraisal are the failure

> to comply with procedural requirements . . . or the articles of incorporation or bylaws of the corporation or the vote required to obtain approval of the corporate action was obtained by fraudulent and deceptive means . . . ."[11]

---

remedy is exclusive where the shareholder's objection is essentially a complaint about price. See Division 3.

[9] Plaintiffs assert, for example, that they suffered a special injury because of upstream payments made pursuant to tax sharing agreements. However, any such injury is identical to the injury suffered by the corporation and the other shareholders.

[10] Plaintiffs have also failed to establish a claim under the Fair Price Requirements of the Georgia Business Corporation Code, OCGA §§ 14-2-1110 through 14-2-1113. Even if these statutes provide a direct remedy to shareholders, they do not apply to the 1993 merger, which occurred more than three years after Farley obtained a ninety-five percent interest in West Point. OCGA § 14-2-1113 (c).

[11] We observe that with regard to the "fraud" exception, the Comment, Note to 1989 Amendment, supra, states that "only 'actual fraud,' involving traditional notions of deception, permits collateral attack on the corporate action." Thus, a claim that "a fiduciary has acted unfairly" cannot be used "to litigate valuation issues that are appropriately disposed of

Id.

Because plaintiffs do not come within the exceptions to the dissenters' rights statute, they must pursue their statutory remedies; they cannot collaterally attack the merger. Id.

> If [plaintiffs] are allowed to maintain their present action, the viability of [the dissenters' rights statute] will be destroyed. Future dissenting shareholders would be able to circumvent the risks of [pursuing the statutory appraisal process] by simply maintaining a separate legal action.

*Columbus Mills v. Kahn*, 259 Ga. 80, 82 (377 SE2d 153) (1989).

Plaintiffs argue that their direct claim for breach of fiduciary duty cannot be raised in a shareholders' appraisal proceeding and that, therefore, they should be able to pursue that claim independently. In this connection, they assert that their claim is unrelated to the "fair value" of their shares. We cannot accept this assertion. The essence of plaintiffs' claim is they would have been paid more money per share if defendants had not breached their fiduciary duty to seek consummation of the merger agreement. This boils down to nothing more than a complaint about stock price.

Again, our statutory appraisal remedy is exclusive. It permits a dissenting shareholder to be paid the fair value of his shares and preempts any other remedy where the claim is essentially one regarding the price the shareholder is to receive for his shares. OCGA § 14-2-1302 (b); Comment, Note to 1989 Amendment. As courts in other jurisdictions with dissenters' rights statutes have observed: "[A] 'remedy beyond the statutory procedure is not available where the shareholder's objection is essentially a complaint regarding the price which he received for his shares.' " *IRA v. Brenner Cos.*, 107 N.C. App. 16, 21 (419 SE2d 354) (1992), quoting *Stepak v. Schey*, 51 Ohio St. 3d 8 (553 NE2d 1072) (1990).

This is not to say that dissenting shareholders have absolutely no remedy for alleged wrongdoing committed before the merger. On the contrary, shareholders who object to a merger are entitled to receive the fair value of their shares prior to the effectuation of the merger. OCGA § 14-2-1301 (5). And any facts which shed light on the value of the dissenting shareholders' interests are to be considered in arriving at "fair value." *Atlantic States Constr. v. Beavers*, 169 Ga. App. 584, 586 (314 SE2d 245) (1984); Annot., Valuation of Stock of Dissenting Stockholders in Case of Consolidation or Merger of Corporation, Sale of Its Assets, or the Like, 48 ALR3d 430, 442 (1973).

4. Even if plaintiffs Grace Brothers, Ltd., and Kidder Peabody &

---

in appraisal proceedings." Comment, Note to 1989 Amendment, supra.

Co., Inc., were not precluded by the statutory appraisal statute from asserting their direct injury claim, we would be compelled to rule against them. By tendering their shares at the offered price of $46 per share, these plaintiffs abandoned their shareholders' rights and acquiesced in the merger plan. *Columbus Mills v. Kahn,* supra at 81.

5. The motion to dismiss the appeals is denied.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 31, 1994 — RECONSIDERATIONS DENIED
DECEMBER 20, 1994 AND JANUARY 13, 1995.

*Powell, Goldstein, Frazer & Murphy, William G. Leonard, John M. Gross, Lewis, Taylor & Todd, John M. Taylor, King & Spalding, Griffin B. Bell, M. Robert Thornton, Robert R. Ambler, Jr.,* for appellants.

*Bondurant, Mixson & Elmore, H. Lamar Mixson, Jeffrey D. Horst, Jill A. Pryor, Sutherland, Asbill & Brennan, John A. Chandler, John North, Willis, McKenzie & Long, Edward L. Long, Jr.,* for appellees.