## A97A1168. CROXTON v. MSC HOLDING, INC.

(489 SE2d 77)

BIRDSONG, Presiding Judge.

The question in this case is whether a shareholder who has an individual, independent contract requiring him to sell, and the corporation to buy, his shares at a certain time for a minimum price (in this case, $400,000) is in all cases nevertheless limited to the statutory appraisal remedy set forth by OCGA § 14-2-1302 for valuation of shares of dissenting shareholders under *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817 (450 SE2d 814).

George Duke Croxton worked for Magnus Software Corporation since 1992. After NYLIFE, Inc. purchased a majority of the company's outstanding stock from Croxton and others, Croxton entered a two-year employment agreement with Magnus and NYLIFE, effective April 30, 1994, to April 30, 1996, wherein he agreed to serve as chief executive officer of Magnus Software. The employment agreement also provided that upon Croxton's termination without cause, "the company shall purchase and employee shall sell one-half of the shares of the company owned by employee on April 30, 1995 and the remainder of employee's shares of the company on April 30, 1996. (1) The purchase price of each one-half of the shares owned by employee will be equal to the 'value' of such shares [as provided herein] or $200,000, whichever is greater." This provision was part of a comprehensive employment agreement which included detailed provisions for performance of his job, provided for nondisclosure of confidential information and non-compete agreements, and described certain intellectual property which Croxton had developed or conceived.

Croxton was terminated without cause in August 1995. On September 11, 1995, Magnus announced its intent to sell certain corporate assets. Croxton's attorney gave notice on September 18, 1995, that if the proposed action were taken, Croxton intended to demand payment for his shares as provided in Article 13 of the Georgia Business Corporation Code (the statutory appraisal procedure). In November 1995 Magnus' assistant secretary sent a "dissenter's notice form" to Croxton and advised him that pursuant to his notice of intention to demand payment for his shares under OCGA § 14-2-1321, Croxton's demand for payment must be sent to the corporation on or before December 8, 1995. On December 5, Croxton's attorney returned the "dissenting shareholder's form," which was executed by Croxton and demanded the "fair value" of his stock pursuant to OCGA § 14-2-1302.

Magnus determined that the fair value of Croxton's shares was $0. Croxton's attorney notified Magnus that Croxton believed its estimate did not represent the fair value of his shares, and that "inasmuch as Mr. Croxton has contractual rights to sell the shares in

question for a consideration not less than $400,000, he estimates that the fair value of [his] shares in question is not less than $400,000 [plus interest]. . . . You may consider this a demand under OCGA § 14-2-1327. If you [are] prepared to settle the demand within the meaning of OCGA § 14-2-1330, we would be pleased to hear from you."

In March 1996 Magnus filed a petition pursuant to OCGA § 14-2-1330 which it denominated as a "nonjury equitable valuation proceeding to determine the fair value of [Croxton's] shares." Croxton answered and counterclaimed for the right to rely on his employment contract which mandated that he sell his shares to Magnus upon his termination without cause and required Magnus to pay the greater of fair market value or $400,000. Attached to Croxton's answer and counterclaim is his employment contract mandating that, in these circumstances, "the company shall purchase and employee shall sell . . . employee's shares of the company" for the price quoted above, amounting to the greater of $400,000 or value.

Magnus contended that under *Grace Bros. v. Farley Indus.*, supra, the statutory proceeding for a dissenting shareholder's demand is Croxton's exclusive remedy; thus, Magnus moved to dismiss Croxton's counterclaim based on his contract. The trial court granted Magnus' motion to dismiss, finding that Croxton's election to pursue dissenter's rights barred any claim he might have had under his contract. Croxton appeals. *Held*:

A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim. *English v. Liberty Mtg. Corp.*, 205 Ga. App. 141, 142 (421 SE2d 286). As to the comparable standard to determining a motion to strike, see *West v. Griggs*, 144 Ga. App. 285, 286 (241 SE2d 26). Our review of such rulings is de novo. *Cobb County v. Jones Group, P.L.C.*, 218 Ga. App. 149, 153 (460 SE2d 516).

The trial court erred in dismissing Croxton's counterclaims asserting his right to payment for his shares according to his employment contract. There are independent but concomitant reasons Croxton has not waived or otherwise lost his right to rely on his contract buy-out provisions.

1. MSC Holding contends that *Grace Bros.* held that a shareholder's exclusive remedy to obtain payment for his stock is via the statutory appraisal remedy provided in OCGA § 14-2-1302 (b). In other words, MSC Holding contends that a shareholder who has contract obligations requiring him to sell back his shares and governing their sale price may not enforce those contract rights and that those rights are void, or that a shareholder possessed of such valuable contract rights must elect to proceed either according to his contract or

according to the statutory rights granted to shareholders generally, in which case he waives the other valuable legal rights. *Grace Bros.* makes no such holding.

*Grace Bros.* involved minority shareholders who sued to enforce a merger agreement under which they would be paid $58 per share. *Grace Bros.* holds, first, that a shareholder's only action against the corporation is a derivative action, unless that shareholder alleges a "special injury" separate or distinct from that suffered by other shareholders, "or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation." Id. at 819; *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584 (397 SE2d 699). The Court held that this requirement was met by those shareholders' claims that defendants breached their fiduciary duty to them by failing to seek consummation of the original merger agreement; "[t]hat claim asserts an injury separate . . . from any injury to the corporation or the majority shareholders because only the minority shareholders stood to receive $58 per share upon consummation of the merger agreement." *Grace Bros.*, supra at 819. In a footnote, however, the Court held that those minority shareholders "[could not] maintain this direct claim . . . because the statutory appraisal remedy is exclusive where the shareholder's objection *is essentially a complaint about price,*" (emphasis supplied) id. at n. 8, as it was in that case. Further, in Division 3, the Court held that *for dissenting shareholders,* "[t]he statutory appraisal remedy is exclusive." Id. at 820. "[The statutory appraisal remedy] permits a *dissenting shareholder* to be paid the fair value of his shares and preempts any other remedy *where the claim is essentially one regarding the price [of] his shares.* OCGA § 14-2-1302 (b)." (Emphasis supplied.) Id. at 821 (3). But, "[t]his is not to say that *dissenting shareholders* have absolutely no remedy. . . . On the contrary, shareholders who object to a merger are entitled to receive the fair value of their shares prior to the effectuation of the merger [cit.][, a]nd any facts which shed light on the value of the dissenting shareholders' interests are to be considered in arriving at 'fair value.' [Cits.]" (Emphasis supplied.) Id.

*Grace Bros.* thus specifically recognizes that individual shareholders may have individual, independent claims and may have a status which differs from other shareholders. For those who occupy the status of *dissenting* shareholders, the only remedy is the statutory appraisal procedure *if* the shareholder's objection is essentially *a complaint regarding the price of his shares.* Id. at 819, n. 8.

Several distinctions arise out of this language. Croxton is a shareholder who has an "individual" contract claim, not merely a derivative claim. His injuries are different from those suffered by other shareholders generally, and he may file an individual action for recovery.

Further, unlike the minority shareholders in *Grace Bros.*, Croxton's claim *under his contract* is not as a "dissenting shareholder." Croxton did have standing as a dissenting shareholder for he notified the corporation that if the proposed sale of corporate assets were effectuated, he would demand payment for his shares as provided by statute, and he executed the "dissenter's demand for payment" form which OCGA § 14-2-1320 (b) required the corporation's assistant secretary to send him and which the assistant secretary advised him had to be returned by a certain date. But these actions did not constitute an "exclusive" election of remedies by a "dissenting shareholder" because his contract independently and in any event required him to sell and entitled him to a definite sum of $400,000 or more. His complaint was the highly personal complaint for breach of a contract for payment of $400,000 or the "value" of his shares, whichever was greater. Regardless whether there was any corporate action to which he dissented, Croxton's contract required him to sell, and the corporation to buy, his shares on April 30, 1995, and April 30, 1996. This sale was "Mandatory," and the promise of specific payment for his shares of $400,000 or more was consideration for his agreement to serve as CEO and for his other promises in his contract. No statutory provision in Title 13 deprives him of his contractual right to payment for his shares as provided in the contract or requires him to "elect" or binds him to an "election."

2. Further in Croxton's favor, the dictate in *Grace Bros.* that the statutory appraisal procedure is exclusive is conditioned on the prerequisite that the shareholders' objection is "essentially a complaint about price." Id. at 819, n. 8. Croxton's actions are not essentially "a complaint about price." His minimum price is already established. It is pre-established by the parties' contract that Croxton is to be paid at least $400,000. The "value" of his shares must be established only so the parties can determine whether that value is greater than $400,000. According to the corporation's valuation under the statutory procedure, the shares' "value" is $0. If this is confirmed, this establishes Croxton's entitlement to $400,000 as promised him in his contract for the mandated sale of his shares. Thus, his counterclaims based on his contract are not essentially a "complaint about price" (id.) because the "price" of his shares is pre-established by contract at $400,000, at least. His counterclaims are not invalid under *Grace Bros.* because they are a demand for $400,000 guaranteed by contract, and not a "complaint about price" of his stock on a market basis.

3. Further, no waiver of claims arises in this case. The corporation's promise to pay Croxton at least $400,000 had nothing to do with the "value" of the stock unless the value was higher than $400,000, in which case he was entitled to that higher sum. He could

pursue his entitlement to the money stated in his contract, and he could pursue the statutory appraisal procedure, even if those remedies were inconsistent (OCGA § 9-2-4), but in this case they were not inconsistent remedies, for in order to determine whether the "value" was higher than $400,000, he was arguably required to file the statutory appraisal procedure to establish that "value." And, if he did not act to determine this amount within a certain time, he might arguably have given up his right to payment for his shares "under [the Business Corporations article]" (OCGA § 14-2-1323), or so the corporation might claim. Tactically then, Croxton acted not unreasonably in making a demand under the statutory appraisal procedure while intending to rely on his contract rights. Judging by the corporation's assertion now that the statutory procedure is Croxton's "exclusive" remedy and that the corporation's contract promise of payment meant nothing, or that at least Croxton has "elected" to accept only the value by the statutory procedure, it is reasonable to assume that if Croxton had *not* pursued the statutory procedure, the corporation would deny his entitlement to a sum higher than $400,000. on the ground that it is necessary to ascertain the "value" by statutory procedure in order to determine whether the "value" exceeded $400,000. In the absence of an express statutory provision setting forth his duties and procedures in the circumstances of this case, Croxton was damned if he followed the statutory procedure and damned if he did not. In these circumstances, his filing of the demand cannot be interpreted as an "election" of remedies amounting to a "waiver" of other remedies, for the law will not infer the waiver of an important right such as exists in Croxton's contract and formed the basis of his agreement to serve as CEO and other agreements in the contract, unless the waiver is clear and unmistakable. *Asberry v. State*, 221 Ga. App. 809 (472 SE2d 562).

4. Neither *Grace Bros.* nor any statutory provision estops Croxton to assert his contract rights merely because he first filed a "dissenting shareholder's demand." The shoe is on the other foot. The corporation entered a binding contract requiring Croxton to sell his shares, in exchange for which it agreed to pay Croxton the greater of the shares' "value" or $400,000. This contract was performed, and the corporation is estopped to contend that, in seeking to have the value determined for purposes of satisfying his contract right, Croxton waived his entitlement to the $400,000 payment.

The trial court erred in striking Croxton's causes of action relating to his contract rights and in striking his "separate defenses" asserting those contract rights.

*Judgment reversed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 9, 1997 —

*Mackay, Daniel, King, Hudson & Bryce, David L. G. King, Jr., Robert H. Hishon*, for appellant.

*Powell, Goldstein, Frazer & Murphy, Hilary Harp, John R. Bielema, Jr.*, for appellee.