A01A1344. PINE CREEK, LLC v. PINE MOUNT, LLC.

(558 SE2d 44)

MILLER, Judge.

Pine Creek, LLC (Pine Creek) appeals from the trial court's partial grant of summary judgment to Pine Mount, LLC (Pine Mount) on Pine Mount's third defense to this dissenter's rights action initiated by Pine Creek pursuant to OCGA § 14-11-1001 et seq., the Dissenters' Rights Article of the Georgia Limited Liability Company Act (the Act).

Pine Creek asserts four enumerations of error. The first and fourth are that the trial court erred in granting summary judgment to Pine Mount on its third defense and that the trial court erred in denying Pine Creek's motion to strike or dismiss Pine Mount's third defense. Both obviously address the same issue. The second enumeration is that the trial court erred in concluding that Pine Creek violated the Operating Agreement, one of the legal bases upon which the trial court granted summary judgment on the third defense. The third enumeration is that the trial court erred in dismissing the petition to allow Pine Mount to pursue a private right of action for damages, because Pine Creek's limited liability action complied with all relevant statutory and contractual requirements, the converse of the second enumeration of error. In summary, there are two issues before the Court: (1) whether the trial court erred in concluding that the Operating Agreement was violated, and (2) whether the trial court erred in granting summary judgment on Pine Mount's third defense, thereby allowing its pursuit of causes of action other than dissenters' rights.

In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment.[1]

So viewed, the evidence was that, from 1984 until the formation of Pine Creek on June 2, 1997, Philip Browning, Jr. (Browning) had held, through various entities, a contract or option to purchase approximately 153 acres located near the Interstate 85 and Old Peachtree Road interchange in Gwinnett County, an area of burgeoning growth and development. In the spring of 1997, nearing the expiration of the option on the property, Madison Ventures, Ltd. and John D. Stephens agreed with Pine Mount (an entity owned by Browning) to form a limited liability company to be known as Pine Creek, LLC, which company would purchase as its sole asset the 153 acres. The parties agreed Pine Mount would have a 25 percent inter-

---

[1] *Birnbrey, Minsk & Minsk v. Yirga*, 244 Ga. App. 726 (535 SE2d 792) (2000).

est in Pine Creek, Madison Ventures a 37.5 percent interest, and Stephens a 37.5 percent interest. Madison Ventures and Stephens were each putting up $2.25 million to close on the property. On June 2, 1997, the parties executed an Operating Agreement for Pine Creek.

On August 27, 1997, John Stephens transferred his 37.5 percent interest in Pine Creek to Stephens, Inc. Madison Ventures consented to this transfer, but Pine Mount (Browning) was not aware of the transfer. Although acknowledging that he was listed as an individual in and signed the Operating Agreement as an individual, Stephens contended that it was a mistake. According to him, the $2.25 million put into Pine Creek came from Stephens, Inc., and the corporation was to have been the member of Pine Creek.

On September 12, 1997, Madison Ventures transferred its 37.5 percent interest in Pine Creek to Stephens, Inc., without advising Pine Mount. The purpose of the transfer was to allow Pine Creek to have part of the property rezoned without the controversy associated with Madison Ventures' owner. On June 30, 1998, Stephens, Inc. transferred this 37.5 percent interest back to Madison Ventures, again without Pine Mount's knowledge.

On July 7, 1998, Pine Creek closed the sale of the 153 acres to M. D. Hodges for over $10 million, thereby triggering Pine Mount's right to dissent under OCGA § 14-11-1002 (a) (2).[2] The sale was completed without calling a meeting of all members of Pine Creek, without a vote of the membership, and without the consent of Browning and Pine Mount.

Pine Creek immediately sent a notice of the sale to Pine Mount. Pine Mount disagreed with selling the property outright and wanted to develop it instead. Pine Mount also disagreed with the sale price and responded with its demand for payment of $4.4 million as the fair value of its 25 percent membership interest. In response, on September 18, 1998, Pine Creek filed its petition to determine the fair value of Pine Mount's membership interest in Pine Creek, pursuant to OCGA § 14-11-1011 (a).

OCGA § 14-11-1002 (b) states in part:

A member entitled to dissent and obtain payment for his or her membership interest . . . may not challenge the limited liability company action creating his or her entitlement unless the limited liability company action fails to comply with procedural requirements of this chapter . . . or the written operating agreement. . . .

---

[2] All parties agree that Hodges, a bona fide purchaser for value without notice, obtained legal title to the property. See *Virginia Highland Civic Assn. v. Paces Properties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001).

Section 6.1.1.3 of the Pine Creek Operating Agreement provides that "[n]o Person may Transfer all or any portion of or any interest or rights in the Person's Membership Rights or Interest, unless . . . the Transfer will not result in the termination of the Company pursuant to [IRS] Code Section 708." Section 6.1.3 further provides:

> The Transfer of any Membership Rights or Interests in violation of the prohibition contained in this Section 6.1 shall be deemed invalid, null and void, and of no force or effect. Any Person to whom Membership Rights are attempted to be transferred in violation of this Section shall not be entitled to vote on matters coming before the Members, participate in the management of the Company, act as an agent of the Company, receive distributions from the Company or have any other rights in or with respect to the Membership Rights.

Pine Mount asserted as its third defense to the petition the failure of Pine Creek and its other members to comply with the procedural requirements of the Act and with the terms of the Operating Agreement, specifically Section 6.1.1.3, i.e., the breach of the prohibition against transfers that would result in the termination of Pine Creek under tax code 26 USC § 708 for tax purposes (which Pine Mount claimed occurred as a result of the September 1997 Madison Ventures' transfer to Stephens, Inc.).

The pertinent subsections of 26 USC § 708 state:

> (a) General rule. For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated. (b) Termination. (1) General rule. For purposes of subsection (a), a partnership shall be considered as terminated only if — . . . (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.[3]

The crux of Pine Mount's argument in its third defense is that the Stephens to Stephens, Inc. August 1997 transfer of 37.5 percent interest combined with the Madison Ventures to Stephens, Inc. September 1997 transfer to produce transfers exceeding 50 percent within 12 months, which under § 708 terminated Pine Creek for tax purposes. Thus, Pine Mount argues, under the Operating Agreement

---

[3] If an entity does not meet the definition of "corporation" under 26 CFR § 301.7701-2, it may elect to be treated as a partnership for federal tax purposes. 26 CFR § 301.7701-3. There is no dispute that Pine Creek was treated as a partnership for federal tax purposes, making 26 USC § 708 applicable.

the second transfer was not only invalid,[4] but also precluded Stephens, Inc. from voting its pre-existing 37.5 percent in favor of the property sale. Since Stephens, Inc. did not have the two-thirds vote needed under the Operating Agreement to effectuate a sale of Pine Creek's sole asset,[5] Pine Mount concludes that the Act was not triggered so as restrict its remedy to a dissenters' rights valuation proceeding.

This reasoning, also advanced by the dissent, hinges on the multi-tiered conclusion that there are no fact issues as to whether (1) the transfer of Madison Ventures' interest to Stephens, Inc. was truly a transfer of dominion and control of Madison Ventures' interest in Pine Creek, (2) the combination of the two transfers completely invalidated the ability of Stephens, Inc. (or for that matter John Stephens) to vote *any* interests whatsoever in favor of the sale of the property, and (3) the consent of Madison Ventures, John Stephens, and Stephens, Inc. to the sale of property must *all* be ignored. We hold that fact disputes exist with regard to these issues. As the failure of any one link in this chain would require a trial, summary judgment was inappropriate. Indeed, there are factual and legal issues as to whether the Operating Agreement was violated and therefore as to whether the Dissenters' Rights Article[6] was triggered. Summary judgment was accordingly inappropriate, and a finder of fact should be allowed to consider the matter in an evidentiary trial.

Specific examples of disputed issues include at least the following. First, to conclude that the property sale was not in accordance with the Operating Agreement, Pine Mount posits that the transfer of Madison Ventures' 37.5 percent interest to Stephens, Inc. in September 1997 was a transfer that for tax purposes under 26 USC § 708 was a sale or exchange of more than 50 percent of interest in Pine Creek within 12 months (when combined with the August 1997 transfer of John Stephens' 37.5 percent interest to Stephens, Inc.). Based on this conclusion, Pine Mount contends that the Madison Ventures' transfer terminated Pine Creek, thus violating Section 6.1.1.3 of the Operating Agreement.

The flaw in this analysis is that "[t]o be recognized for tax purposes, a transfer of a partnership interest must vest dominion and

---

[4] Section 6.1 of the Operating Agreement provides that any person to whom membership rights are attempted to be transferred in violation of this section loses the right to "vote on matters coming before the Members, participate in the management of the Company, act as an agent of the Company, receive distributions . . . or have any other rights in or with respect to the Membership Rights."

[5] Under Section 5.1.3.1 of the Operating Agreement, the sale of substantially all of the assets of Pine Creek was required to be approved by "no less than two-thirds (2/3) of the Percentages then held by Members."

[6] OCGA § 14-11-1001 et seq.

control in the transferee."[7] Here, notwithstanding its transfer of interests, Madison Ventures retained (1) the right to receive any and all cash and other distributions of assets from Pine Creek, (2) the right to use such cash or distributions to pay debts owed to it by Stephens, Inc. or other debts of Pine Creek, (3) the right to prevent, by withholding consent in its sole and unfettered discretion, Stephens, Inc.'s sale or assignment of the 37.5 percent interest to another party, and (4) control over Stephens, Inc.'s voting rights with respect to the 153 acres. Thus, there is a question of fact as to whether a transfer, so structured, vested dominion and control in Stephens, Inc.

Even assuming this was not a disputed fact issue, a second issue is whether under the Operating Agreement, the transfer of Madison Ventures' 37.5 percent interest to Stephens, Inc. completely invalidated Stephens, Inc.'s ability to vote its pre-existing 37.5 percent interest (received from John Stephens) that it held before the Madison Ventures' transfer. Section 6.1.1.3 of the Operating Agreement appears to invalidate only those voting rights that were wrongfully transferred (i.e., that were transferred such that Pine Creek was terminated for tax purposes).[8] This would pertain only to the second transfer — the Madison Ventures' transfer — which (when combined with prior transfers) exceeded the 50 percent rule of § 708 of the tax code.

The importance of this conclusion is that despite the alleged invalidity of the Madison Ventures' transfer, Stephens, Inc. retained the right to vote its pre-existing 37.5 percent interest. Since Madison Ventures also approved the sale of the 153 acres, then even if the transfer of Madison Ventures' interest was invalid (and Madison Ventures thus retained its 37.5 percent interest), the votes in favor of the sale were still 75 percent — more than enough to approve the transfer even without Pine Mount's votes. Indeed, even if Stephens, Inc.'s receipt of interests from John Stephens was somehow invalid, the fact that John Stephens himself approved the sale would mean that regardless of which of these three parties held jointly or individually the 75 percent in interests, the written approval of all three to the sale would meet the two-thirds requirement of the Operating Agreement in any case.

In light of these factual and legal issues, we reverse summary judgment so as to allow the trier of fact to determine the merits of the petition.

---

[7] *Pflugradt v. United States*, 310 F2d 412, 416 (7th Cir. 1962).

[8] "Any Person to whom *Membership Rights* are attempted to be transferred in violation of this Section shall not be entitled to vote on matters coming before the Members, participate in the management of the Company, act as an agent of the Company, receive distributions from the Company or have any other rights in or with respect to the *Membership Rights*." (Emphasis supplied.)

*Judgment reversed. Ruffin, Barnes and Ellington, JJ., concur. Andrews, P. J., Johnson, P. J., and Eldridge, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because I believe the majority has totally ignored the plain wording of the controlling law and contract documents at issue here, as well as overemphasizing immaterial issues of fact which fly in the face of the wording of the documents, I respectfully dissent.

First, a number of facts in addition to those set out in the majority should be noted. It is not disputed that Browning dealt only with Wayne Mason, former Gwinnett County commissioner and principal of Madison Ventures, Ltd. during negotiations concerning the 153 acres. It is also not disputed that Mason brought in John D. Stephens, individual, as a third partner in the venture. The documents establishing Pine Creek, including the Operating Agreement, were prepared by Andersen, Davidson & Tate, appellate counsel for Pine Creek, on behalf of Madison Ventures and Stephens, individually, and reviewed by separate counsel for Pine Mount.[9] At no point during Browning's negotiations with Mason was John D. Stephens, Inc. mentioned.[10]

On June 2, 1997, the Operating Agreement for Pine Creek was signed. The initial paragraph lists the parties as "JOHN D. STEPHENS, a resident of the State of Georgia ('JDS'), MADISON VENTURES, LTD., a Georgia corporation ('Madison'), and PINE MOUNT, L.L.C., a Georgia limited liability company ('Pine Mount')." The same three parties are listed as members in Paragraph 2.7 titled "Members" and the same three parties signed the agreement. There is no mention in the document of John D. Stephens, Inc. (Stephens, Inc.).

In its brief here, Pine Creek states that the trial court

> correctly noted that any attempted transfer of an interest in the Company which would result in a termination of the Company under I.R.C. § 708 would be "deemed invalid, null and void, and of no force or effect" under Paragraph 6.1.1.3 of the Operating Agreement, and *accordingly found that the September 12, 1997 Madison Ventures to Stephens, Inc. [t]ransfer failed to transfer any interest in the Company to Stephens, Inc.*

(Emphasis supplied.)

Nonetheless, the majority has found extensive factual issues

---

[9] Stephens repeatedly referred to Andersen, Davidson & Tate as "representing the deal."

[10] That company's shareholders were Stephens and his three sons.

regarding whether, in fact, Madison Ventures' transfer to Stephens, Inc. was truly a transfer of dominion and control of Madison Ventures' interest in Pine Creek. Such a conclusion ignores the documents which were, again, prepared by Andersen, Davidson & Tate for Pine Creek and Madison Ventures. The Transfer and Assignment of Limited Liability Company Interest, found unambiguous by the trial court, states that "Assignor [Madison Ventures] hereby sells, conveys, assigns, and transfers to Assignee [Stephens, Inc.] the Interest and all of Assignor's right, title and interest in and to the Company [Pine Creek] in consideration for Assignee's execution in favor of Assignor of a Promissory Note of even date herewith. . . ."

It has been repeatedly held that

> [t]he construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court. An ambiguity exists only if after the application of the pertinent rules of interpretation, it remains uncertain which of two or more possible meanings the parties intended. "No construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation."

(Footnotes omitted.) *Tucker Materials v. DeVito Contracting &c.*, 245 Ga. App. 309, 310 (535 SE2d 858) (2000). See also *Balata Dev. Corp. v. Reed*, 249 Ga. App. 528, 529 (548 SE2d 668) (2001).

Considering the documents effecting this transfer from Madison Ventures to Stephens, Inc., without reference to any parol evidence regarding an intent contrary to that expressed in the documents,[11] it is clear that the trial court correctly concluded that this transfer would violate § 708 and, thereby, the Operating Agreement. *Evans v. Commr. of Internal Revenue*, 54 TC 40, 50-51 (U. S. Tax Court 1970), aff'd, 447 F2d 547 (7th Cir. 1971); 26 CFR § 1.708-1 (b) (2).

The majority also ignores the argument actually made below by Pine Creek. As restated by the trial court, that argument was that even if there were a § 708 termination, the Operating Agreement would render the transfers null and void, such that (1) the interests would never be considered transferred; (2) there would not be a termination under § 708; and (3) there would not be a violation of the Operating Agreement because John D. Stephens signed the docu-

---

[11] Such parol evidence may not, of course, be considered to alter the terms of a written document where the terms are unambiguous. OCGA § 13-2-2 (1). This parol evidence was specifically objected to below by Pine Mount.

ments concerning the limited liability company action both in his individual capacity and as president of John D. Stephens, Inc. and Madison Ventures ratified the sale.

This circuitous argument was, I believe, correctly rejected by the trial court as ignoring the plain language of Section 6.1.3 regarding the consequences of an impermissible transfer, as agreed to by all parties to the Operating Agreement.

Therefore, I agree with the trial court that Stephens, Inc., as the person to whom Madison Ventures sought to transfer its 37.5 percent, lost its rights to participate in Pine Creek, at least as to this 37.5 percent.[12] Since the sale to M. D. Hodges could not have been completed by Stephens, Inc. voting only its other 37.5 percent because, according to Section 5.1.3.1 of the Operating Agreement, the sale of substantially all of the assets of Pine Creek was required to be approved by "no less than two-thirds (2/3) of the Percentages then held by Members," the limited liability company action was done in contravention of the Operating Agreement.

That, as concluded by the majority, had the improper transfers not occurred, Stephens individually (and/or Stephens, Inc.) along with Madison Ventures could have done what they did regarding the sale of the 153 acres without Pine Mount's participation or knowledge obfuscates the real issue. That issue is, if the Operating Agreement were violated, all parties agreeing that the sale of the property cannot be undone, what is Pine Mount's remedy? Is it restricted to the "nonjury equitable valuation proceeding" provided by OCGA § 14-11-1011 of the Dissenters' Rights Article, or may it sue for breach of contract, fraud, and other remedies?

I agree with the trial court which concluded that Pine Mount was not, as argued by Pine Creek, restricted to the dissenters' rights proceeding,[13] but could pursue other remedies.

Pine Creek relies on *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817 (450 SE2d 814) (1994), which dealt with dissenting shareholders' rights in a corporate merger situation. That case, however, did not

---

[12] I would not decide whether the trial court correctly determined that Stephens, Inc. was precluded from voting its original 37.5 percent received from Stephens by its receipt of the second 37.5 percent in violation of § 708 because that decision of the trial court was not necessary to the decision rendered and was, therefore, obiter dicta. *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996); *Veal v. Barber*, 197 Ga. 555, 560 (1) (30 SE2d 252) (1944); *Peacock v. Peacock*, 196 Ga. 441, 449 (26 SE2d 608) (1943); *Glisson v. Hosp. Auth. of Valdosta &c.*, 224 Ga. App. 649, 652 (481 SE2d 612) (1997).

[13] To the extent that Pine Creek argues here that Pine Mount should have sought to enjoin the limited liability company action, i.e., the sale to M. D. Hodges, the argument is factually inapposite because the sale was concealed from Pine Mount until the sale was consummated and, as acknowledged by Pine Creek's brief, "Pine Mount could not legally have set aside the sale of the Property to Hodges, a bona fide purchaser for value, without notice of any conflicting interest in the property."

involve a situation where there was a violation of the articles of incorporation or bylaws or fraudulent and deceptive means used to obtain approval of the corporate action. As the Supreme Court noted, it was instead a "complaint about stock price," as to which the statutory appraisal remedy is exclusive. Id. at 821. See also *Matthews v. Tele-Systems*, 240 Ga. App. 871, 873 (525 SE2d 413) (1999) (depletion of corporate assets through excessive salaries relates to value of shares to be determined in appraisal action); *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 833 (3) (503 SE2d 81) (1998) (claims of violation of corporate bylaws not viable, statutory appraisal action exclusive remedy); *Croxton v. MSC Holding, Inc.*, 227 Ga. App. 179, 182 (2) (489 SE2d 77) (1997) (shareholder's complaint not essentially a "complaint about price" and he was not restricted to statutory appraisal proceeding).

Had the legislature intended that a member of a limited liability company be restricted to the dissenters' rights procedure in the case of a violation of the operating agreement, it could have so specified. Instead, it designated the appraisal process for situations where no such violation or fraud had been shown and *only* value was at issue.

I am persuaded, as was the trial court, by *Shidler v. All American Life &c. Corp.*, 775 F2d 917 (8th Cir. 1985), which considered the Iowa dissenting shareholders' statute and concluded that the legislature had not intended, by that statute, to exclude other private remedies. As stated therein,

> [t]he defendants argue first that statutory appraisal, [cit.], is the sole relief intended by the legislature for disappointed minority shareholders. However, the statute provides for appraisal as the exclusive remedy only where "the proposed corporate transaction [is] approved by the required vote." [Cits.] . . . If the transaction is unlawful [as the result of improper corporate action], appraisal cannot be the exclusive remedy.

Id. at 922 (I) (D).

If Pine Mount were restricted, in this situation, to the dissenters' rights valuation proceeding, as noted in *Shidler*, the statute would condone wrongdoing, and I will not presume the legislature intended that result. Therefore, I believe that the trial court properly granted Pine Mount summary judgment on its third defense and dismissed the petition of Pine Creek.

I am authorized to state that Presiding Judge Johnson and Judge Eldridge join in this dissent.

DECIDED NOVEMBER 30, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Andersen, Davidson & Tate, Gerald Davidson, Jr., Thomas T. Tate, Tanya A. Eades, Robert H. Hishon,* for appellant.

*Chamberlain, Hrdlicka, White, Williams & Martin, Eric C. White, James L. Paul, Matthew J. McCoyd,* for appellee.