**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 1, 2019**

# In the Court of Appeals of Georgia

A19A0880. SDM INVESTMENTS GROUP, LLC v. HBN MEDIA,   DO-033
INC. et al.

DOYLE, Presiding Judge.

This case arises from a merger (or majority buyout) of HBN Media, Inc. ("HBN"), by a subsidiary of Serent Capital, L.P. ("Serent"), in which merger SDM Investment Group, LLC, which was a founding shareholding in HBN, was unable to maintain any ownership interest of the new company. SDM sued HBN, the chief operating officer ("CEO") of HBN, individual board members, and employees[1] ("collectively "the Defendants") based on the merger, stock buyout, and stock dilution prior to the merger, alleging (1) fraudulent misrepresentation by the CEO and

---

[1] The named individuals were Duane LeGate, Wayne Starks, James Parker, John Zdanowski, Lester Cox, Frank Prindle, Michael LeMonier, Matthew Swanson, and William B. O'Neal.

HBN both before and after the merger; (2) breach of contract; (3) breach of fiduciary duty; (4) unjust enrichment; and (5) fraud. SDM requested inspection of business records, an accounting, a declaration of contractual and fiduciary duties, disgorgement of proceeds, damages, attorney fees, costs, and punitive damages. The trial court granted summary judgment to the defendants,[2] and SDM appeals. In several enumerations of error, SDM argues that the trial court erred by granting summary judgment on its claims.[3] For the reasons that follow, we affirm.

> To prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law. . . . We review a summary judgment ruling de novo, viewing the evidence in the record, as well as any inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party.[4]

---

[2] A hearing on the summary judgment motion apparently occurred on June 25, 2018, but a transcript of the hearing does not appear in the appellate record.

[3] We note that SDM's enumerations of error characterize the trial court's act as a dismissal, but in fact, the court granted summary judgment on the claims.

[4] (Citations and punctuation omitted.) *Miller v. FiberLight, LLC*, 343 Ga. App. 593, 593-594 (1) (808 SE2d 75) (2017), quoting *Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012). See *Hunt v. Thomas*, 296 Ga. App. 505, 508 (2) (675 SE2d 256) (2009) ("A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not

Viewed in this light, the record shows that HBN was formed in 2010 by CEO Duane LeGate, and during the company startup period, SDM became a shareholder of HBN in January 2011, investing $22,000 for 30,000 shares. The startup period ended March 31, 2011. Throughout 2011, HBN experienced liquidity problems, and LeGate reached out to investors to obtain loans during this time, with promises of additional stock for different loan amounts.

In June 2014, an investment bank was hired to assist with marketing HBN for sale. In September 2014, Serent Capital sent a letter of intent to the investment bank and HBN, offering to purchase approximately 60 percent equity in HBN. The letter stated that "[t]he current shareholders will receive approximately $32.6 million under the current structure in proceeds. In addition[,] the current shareholders will maintain equity ownership representing a minimum of 40 [percent] ownership in the Company." This offer later was presented to the Board along with a separate offer from Frontier Capital. The Frontier offer was presented as valuing HBN at $47.5 million and including a purchase of 56.3 percent of the equity and rolling over an equity percentage of all HBN shareholders; while the Serent offer was presented as valuing HBN at $45 million and including a purchase of 62.9 percent of the equity,

the analysis employed." (punctuation omitted)).

3

completely cashing out many shareholders and rolling over only the equity of specific shareholders/employees — LeGate, Swanson, and O'Neal. The Board decided to pursue Serent's offer.

In Feburary 2015, after negotiations between HBN and Serent, LeGate sent to shareholders a memorandum explaining the terms of the proposed merger, including that all shareholders would be paid for 100 percent of their shares except for himself and two other people. That memorandum does not contain a total stock breakdown. The shareholders voted in favor of the merger with Serent, although SDM voted against the action. Approximately 16 months after the merger, the new entity was purchased by Fidelity National Financial for approximately $225 million.

SDM filed the instant case in October 2016. The Defendants moved for summary judgment, and SDM responded. In a 30-page order drafted by Defendants' counsel,[5] the trial court granted the motion for summary judgment.

---

[5] We note that the order contained numerous characterizations of the evidence and findings of disputed facts, portions of the order are quotes directly from LeGate's affidavit or the parties' briefs rather than a separate recitation of independently determined facts based on the documents and depositions. Despite these irregularities, we affirm the grant of summary judgment.

1. SDM maintains, in numerous enumerations of error, that the trial court erred by granting summary judgment to the Defendants. We disagree because this case should have been pursued as a dissenter's rights action.

> Where a merger is consummated, a record shareholder is entitled to dissent from and to obtain payment of the fair market value of his shares. Such dissenting shareholders, however, are precluded from challenging the corporate action creating their entitlement unless the corporate action fails to comply with procedural requirements of this chapter or the articles of incorporation or bylaws of the corporation or the vote required to obtain approval of the corporate action was obtained by fraudulent and deceptive means, regardless of whether the shareholder has exercised dissenter's rights.[6]

Pretermitting the various erroneous findings in the trial court's order, we affirm the grant of summary judgment because SDM failed to exercise its dissenter's rights under OCGA § 14-2-1302 to the Serent buyout.[7] At the time of the buyout, SDM knew that 1,381,000 shares had been issued, and thus, regardless of whether the

---

[6] (Footnote omitted.) *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 833 (3) (503 SE2d 81) (1998) (holding that the claims against the directors and company could not go forward despite claims that the merger violated state law, company bylaws, and articles of incorporation because the claims were actually attacks on the stock prices), quoting OCGA § 14-2-1302 (a) (1), (b).

[7] See *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994).

shares were issued to LeGate or others, SDM should have exercised its dissenter's rights for any alleged stock dilution, which should have been apparent from the total shares issued and the amount of money obtained by SDM for its shares as a percentage of that total number. Additionally, SDM's claims for fraud, misrepresentations, or breaches of fiduciary duties by LeGate, HBN, or other board members based on improper issuance of stock resulting in dilution of SDM's ownership or of actual or perceived differences in the Serent offer and the agreement presented to and voted on by the shareholders (that is, that SDM should have been able to roll over 40 percent of its shares or that it received only 60 percent of the value of its shares) are simply attacks on the price SDM ultimately received for its shares and/or the terms of the buyout, rather than claims for actual fraud that would have allowed it to circumvent the exclusive remedy of the dissenter's rights statute.[8]

---

[8] See id. at 820 n.11 ("[O]nly 'actual fraud' involving traditional notions of deception, permits collateral attack on the corporate action.'"), & 821 (3) ("The essence of plaintiffs' claim is they would have been paid more money per share if defendants had not breached their fiduciary duty to seek consummation of the merger agreement. This boils down to nothing more than a complaint about stock price."). See also *Lewis*, 232 Ga. App. at 833 n.3 ("Appellants implicitly assert that Class C shareholders were overcompensated under the share exchange ratio, so, at bottom, appellants' claim is about [pricing].").

2. To the extent that SDM alleged claims of breach of fiduciary duty, breach of contract, and misrepresentation regarding its preemptive rights and improper stock issuance, it has failed to allege specific injuries to itself rather than injuries to the Company or the other minority shareholders, and any such injury against all the minority shareholders that is not particular to the individual shareholder should have been brought via a derivative suit.[9] SDM argued in its complaint that it was not required to bring a derivative action based on agreements signed by the other shareholders; pretermitting whether this was sufficient to allow SDM to avoid pursuing a derivative action, it has failed to allege an injury from the breaches of contracts or violation of its preemptory rights that are separate from the damages arising from the buyout (i.e., a reduction of the price it received for its shares because

---

[9] See *TMX Finance, LLC v. Goldsmith*, __ Ga. App. ___, ___ (1) (A19A0855, A19A0864; decided Sept. 12, 2019) (explaining that fraud and breach of fiduciary duty claims must be personal to the plaintiff and not directed at minority shareholders overall in order for a shareholder to have standing to bring claims as an individual rather than in a shareholder derivative action); *Crittenton v. Southland Owners Assn.*, 312 Ga. App. 521, 524 (2) (718 SE2d 839) (2011) (explaining claims that must be brought via a derivative suit rather than by a shareholder individually). Compare *Coxton v. MSC Holdings, Inc.*, 227 Ga. App. 179, 181-182 (1) (489 SE2d 77) (1997) (explaining that an employee's separate employment contract operated to allow the employee/shareholder to pursue a claim for breach of contract rather than via a dissenter's rights action). Moreover, "[t]he law is well settled that a former shareholder in a merged corporation has no standing to maintain a shareholder's derivative action." *Grace Bros.*, 264 Ga. at 818 (1).

7

of the stock issuance), and thus, SDM also should have pursued these claims via a dissenter's rights action.[10]

3. The trial court also properly granted summary judgment on SDM's remaining claim for unjust enrichment. SDM contended that the Defendants were unjustly enriched through their wrongful conduct by gaining additional stock and becoming stockholders of the new entity while preventing SDM from doing the same.

> The theory of unjust enrichment applies when as a matter of fact there is no legal contract . . ., but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for. . . .[11]

---

[10] See *Grace Bros.*, 264 Ga. at 821 (3) ("This is not to say that dissenting shareholders have absolutely no remedy for alleged wrongdoing committed before the merger. On the contrary, shareholders who object to a merger are entitled to receive the fair value of their shares prior to the effectuation of the merger. OCGA § 14-2-1301 (5). And any facts which shed light on the value of the dissenting shareholders' interests are to be considered in arriving at 'fair value.'"). See also *Levy v. Reiner*, 290 Ga. App. 471, 474 (2) (659 SE2d 848) (2008) ("the depletion of corporate assets through excessive salaries would relate to the value or price [the plaintiff] is to receive for his shares [and a dissenter's rights action is the] exclusive remedy for matters affecting the price of [the plaintiff's stock]").

[11] *Regional Pacesetters, Inc., v. Halpern Enterprises, Inc.*, 165 Ga. App. 777, 782-783 (2) (300 SE2d 180) (1983).

SDM contends that the trial court erred by granting summary judgment on this claim because there are questions of disputed material fact as to whether SDM conferred benefits on the Defendants such as assistance in technology matters. In its complaint, however, SDM did not allege that it provided technology services or other benefits for which HBN failed to pay;[12] rather, SDM alleged that the Defendants were unjustly enriched because they prevented SDM from receiving the full measure of its stock and prevented it from participating in the new entity. That claim, as stated in Division 1, should have been brought pursuant to a dissenter's right action. Accordingly, the trial court did not err by granting summary judgment on this claim.

*Judgment affirmed. Coomer and Markle, JJ., concur.*

---

[12] Compare with *Jones v. White*, 311 Ga. App. 822, 827-828 (1) (b) (717 SE2d 322) (2011) (jury could infer plaintiff "did compensable consulting work in furtherance of the" project), quoting Restatement of Restitution, § 1, Unjust Enrichment, cmt. b (1937) ("The word 'benefit' denotes any form of advantage.") (punctuation omitted).