## A98A1935. RUBIN v. CELLO CORPORATION.
### (510 SE2d 541)

BLACKBURN, Judge.

Joseph Rubin appeals the trial court's order granting defendant Cello Corporation's motion for summary judgment in the underlying product liability action. The trial court determined that Rubin failed to exercise ordinary care for his own safety.

"It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993)." (Citation and punctuation

omitted.) *Anderson v. Svc. Merchandise Co.*, 230 Ga. App. 551 (496 SE2d 743) (1998). "Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Zeller v. Home Fed. Savings &c.*, 220 Ga. App. 843 (471 SE2d 1) (1996).

1. The evidence, when viewed in the light most favorable to Rubin, establishes that Rubin slipped and fell at the Medical College of Georgia in an area where a fellow employee was applying Cello's product, Mop 'N Strip. In Rubin's complaint against Cello he asserts a claim for defective design contending that Cello should have added a colorant to its product. Cello contends that its product is not defective and that Rubin assumed the risk of injury.

(a) "In *Banks* [*v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994)], the Supreme Court rejected the proposition that a product is not defective where it is reasonably suited for its intended purpose and where the presence or absence of a design feature does not prevent the product from functioning properly in its intended use. . . ." Id. at 733 (1), overruling *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436) (1985). The court instead adopted a risk-utility analysis to be used in evaluating design defect cases, whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product. *Banks*, supra at 734 (1). The court identified several factors relevant to such an analysis, including the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative. Id. at 736-737, n. 6.

"Although *Banks* did not expressly address the open and obvious doctrine, the clear import of the decision is that no one factor absolutely controls the analysis as to whether a product is defective. Indeed, *Banks* identifies the user's knowledge of the product, common knowledge and the expectation of danger, and the user's ability to avoid danger as several factors to be included in the analysis,

without indicating that any of such factors is controlling. Accordingly, it is clear that under *Banks*, the open and obvious nature of the danger is but one factor to be considered in determining whether a product is defective. See *Raymond* [*v. Amada Co., Ltd.*, 925 FSupp. 1572, 1578 (N.D.Ga. 1996)] (concluding that *Banks* impliedly overruled the open and obvious doctrine in design defect cases). See also Maleski, Eldridge's Georgia Law of Products Liability, § 6B-3 at 62 (Supp. 1991) (In jurisdictions that emphasize a policy of risk-utility balancing, the fact that some defect is open and obvious is merely one element to be weighed against all other relevant factors)." (Punctuation omitted.) *Bodymasters Sports Indus. v. Wimberley*, 232 Ga. App. 170, 172 (501 SE2d 556) (1998).

Therefore, the open and obvious nature of the product and the availability of an alternative design are not controlling because they are just two factors to be considered along with many others in determining whether a product is defective. The trial court erred in granting summary judgment on this issue.

(b) As we held in *Bodymasters*, supra at 173, the affirmative defense of assumption of the risk is still available to the defendant in a product liability action.

" 'The defense of assumption of the risk of danger applies when the plaintiff, with a full appreciation of the danger involved and without restriction of his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.' (Citations and punctuation omitted.) *Cornwell v. Chambers of Ga.*, 228 Ga. App. 64, 65 (491 SE2d 132) (1997). 'Whether a party assumed the risk of his injury is a jury question that should not be decided by summary adjudication unless the defense is conclusively established by plain, palpable and undisputed evidence.' (Punctuation omitted.) Id. at 66." *Bodymasters*, supra at 173-174.

In the present case, Rubin deposed that he was attempting to stay away from the portion of the floor that was obviously wet from being cleaned. He deposed that he could not distinguish that the area where he was walking was wet. Therefore, we cannot say, as a matter of law, that Rubin voluntarily exposed himself to a known risk. This is not such a case upon which assumption of the risk has been

established by plain, palpable and undisputed evidence.

2. Rubin further contends that because he was looking where he was going when he slipped and fell on defendant's product, *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), precludes summary judgment. Although for the reasons stated in Division 1 we reverse the trial court's grant of summary judgment, we note that *Robinson* does not apply to the facts of this case in the manner sought by Rubin. The defendant herein is not the occupier or owner of the property where the incident occurred, but the manufacturer of a product. This is not a slip and fall case in the traditional sense, but a product liability action.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 12, 1998.

*Louis Saul, Jay M. Sawilowsky*, for appellant.
*Timothy S. Mirshak*, for appellee.