A00A0267. BIRNBREY, MINSK & MINSK, LLC v. YIRGA et al.
(535 SE2d 792)

ANDREWS, Presiding Judge.

Noah Yirga, the guardian of Elleni Tombassa, sued Birnbrey, Minsk & Minsk, LLC (Birnbrey), Garland W. Campbell, and The Mansion Restaurant, Inc. (Mansion) in an effort to recover damages allegedly relating to an automobile collision. After Birnbrey's motion for summary judgment was denied, this Court granted Birnbrey's application for interlocutory appeal.[1] Birnbrey claims it had no liability for the incident. We agree and reverse.

In reviewing the grant or denial of summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. _Goring v. Martinez_, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996). When so viewed, the evidence showed that Birnbrey held its annual holiday luncheon for employees and guests of the firm on December 15, 1995, at the Mansion. Although Birnbrey closed early for the luncheon, attendance was optional. Campbell, a CPA with the firm, arrived at the Mansion at about 12:45 p.m. and left at about 2:30 p.m., driving his own vehicle. During the luncheon, Campbell consumed two to four glasses of wine. Afterwards, Campbell drove to a friend's apartment where he remained for about three hours. Campbell and his friend, Tom McAnnally, talked and walked in nearby Piedmont Park. At approximately 5:45 p.m., Campbell left McAnnally's home intending to visit another friend, who lived across town. While en route, at 6:13 p.m., the collision at issue occurred.

The other driver, Tombassa, sustained a traumatic brain injury. Some evidence suggested that Tombassa may have experienced a seizure immediately before the collision.[2] According to Campbell, "[i]t

---

[1] While not a party to this appeal, the Mansion submitted an amicus curiae brief in support of Birnbrey.

[2] The police report noted, "Vehicle #1 [Tombassa's] was south on Buford Hwy. and for

looked like she was sliding or something," as her vehicle went across several lanes of traffic. Campbell testified, "[m]y recollection is of her car coming at me from the left and me stomping on the brakes trying to avoid hitting her." According to Campbell, he did "everything humanly possible to avoid hitting her," including "almost killing myself." He felt that he did not cause the accident and testified that he was "[n]ot in the least bit" impaired at the time of the collision. Campbell sustained a head injury when his head smashed the windshield. He testified that he did not consume any alcoholic beverages after leaving the Mansion. Campbell was cited for DUI and leaving the scene of an accident. Campbell declined field testing and subsequently on advice of counsel entered a guilty plea to DUI.

The complaint alleged that Campbell was operating his vehicle under the influence of alcoholic beverages that had been furnished to him by Birnbrey within the scope of his employment. The complaint further alleged that the Mansion continued to serve alcoholic beverages to Campbell when its agents knew or should have known he posed a danger to others.

Birnbrey sought summary judgment, arguing that it could be held liable only if there was evidence showing that the firm served alcohol to Campbell while he was noticeably intoxicated. See OCGA § 51-1-40 (b). The motion was denied, but the matter was certified for immediate review.

1. Birnbrey asserts that the trial court erred by failing to grant its motion for summary judgment because the social host liability statute (OCGA § 51-1-40) foreclosed a finding of liability on its part. As a general rule,

> [a] person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons.

OCGA § 51-1-40 (b). But the social host liability statute carves out two exceptions, one pertaining to minors and the other when:

> A person . . . who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable

---

reasons unknown at the time crossed the northbound lanes and was struck by Vehicle #2 [Campbell's] which was north on Buford Hwy. It was determined at the hospital that the driver of Vehicle #1 had a massive brain hemorrhage prior to the accident." When transferring Tombassa to another hospital, the discharging physician noted, "It was felt that the patient had a seizure prior to the accident." ·

intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such . . . person when the sale, furnishing, or serving is the proximate cause of such injury or damage.

See *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 891 (1) (473 SE2d 213) (1996).

Thus, Birnbrey as a social host had no liability to a third party unless (1) when Campbell was in a state of noticeable intoxication, Birnbrey knowingly furnished alcoholic beverages to him; (2) it did so knowing that Campbell would soon be operating a motor vehicle; and (3) the act of supplying the alcoholic beverages was the proximate cause of the injuries sustained. Pretermitting whether Birnbrey knew that Campbell would soon be driving or any consideration of proximate causation, the determinative issue is whether the evidence demonstrated that Birnbrey furnished alcohol to a noticeably intoxicated Campbell. *McElroy v. Cody*, 210 Ga. App. 201, 202 (435 SE2d 618) (1993). We find that it did not.

Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.

(Citations and punctuation omitted.) *Michelin Tire Corp. v. Irving*, 185 Ga. App. 783, 784 (1) (366 SE2d 156) (1988).

Birnbrey offered direct evidence attesting that Campbell was not in a state of noticeable intoxication while at the Mansion and did not appear noticeably intoxicated when he left the luncheon. Firm member Allen Landis testified, "[h]e certainly seemed to be normal acting, normally as he acts around the office." Wendy Minsk stated that she was sure that she talked with Campbell at the luncheon and did not recall anything out of the ordinary that Campbell did at the luncheon. Malcolm Minsk testified that he "didn't notice anybody acting out of line in any manner." Several other employees remembered seeing Campbell at the luncheon, but no one testified that they recalled seeing anything unusual that day. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." (Cita-

tion and punctuation omitted.) *Withrow Timber Co. v. Blackburn*, 244 Ga. 549, 553 (261 SE2d 361) (1979).

To attempt to create an inference that Campbell was in a state of noticeable intoxication, Tombassa offered circumstantial evidence. Officer John E. Fox, an off-duty officer, was working security at a nearby shopping center at the time of the incident but did not see it. After an unnamed person suggested that Fox proceed to investigate a man who was bleeding, Fox intercepted Campbell as he was exiting a drug store. Fox testified that "[h]e did sway back and forth just a little bit because — he did have a little — a head injury." Although Fox only spent a few moments with Campbell before turning him over to another officer, Fox testified, "I had a very strong impression with my background and training, especially with all the arrests I do make on the STAR team, that this individual was well over a .10." But Fox also testified that Campbell did not seem confused and admitted he did not conduct any field testing of him. Nor was any blood alcohol testing ever performed. Based on his brief encounter with Campbell, Fox deduced that he had a blood alcohol level well over 0.10. But these observations about Campbell's condition occurred several hours after Campbell left the luncheon. While this testimony constituted circumstantial evidence that Campbell may have been intoxicated earlier in the day, it did not demand such a finding.[3] *McElroy*, supra.

Tombassa also offered the affidavit of J. Phillip Hancock as an expert witness. Hancock, a former employee of the State Crime Lab, stated that between 1972-1983 he had studied the metabolism, effect, and absorption of alcohol. This expert surmised that at the time Campbell left the luncheon, he would have had a level of intoxication of 0.15 or greater, assuming that Campbell did, in fact, have a blood alcohol level of 0.10 or greater 3.75 hours later. Hancock opined that "[i]f Defendant Campbell was showing manifestations of having a blood alcohol level of .15, the people with him should have noticed a level of substantial intoxication."

Again, such circumstantial evidence would not defeat positive, direct testimony to the contrary. Tombassa's effort to impute constructive knowledge to the persons with Campbell is unpersuasive. Drawing an inference premised on a nonexistent fact, "[i]f Defendant Campbell was showing manifestations," cannot surmount positive direct testimony that Campbell appeared and acted "normal" to the attendees of the luncheon. Rather, the uncontroverted evidence of record demonstrates that while at the luncheon, Campbell did not

---

[3] Donald S. Brown, who witnessed the impact and who rushed over to provide immediate aid to Campbell while he was still inside his wrecked vehicle, stated he did not smell any alcohol on Campbell.

appear to be in a "state of noticeable intoxication."

Nor can OCGA § 3-3-22 save Tombassa's case. OCGA § 3-3-22 provides that "[n]o alcoholic beverage shall be sold, bartered, exchanged, given, provided, or furnished to any person who is in a state of noticeable intoxication." But in the absence of evidence that Campbell appeared noticeably intoxicated, this claim lacks a required element. Compare *Whelchel v. Laing Properties,* 190 Ga. App. 182, 183 (1) (378 SE2d 478) (1989). In these circumstances, we find that Birnbrey was entitled to judgment as a matter of law. *Allen Kane's Major Dodge v. Barnes,* 243 Ga. 776, 779, n. 1 (257 SE2d 186) (1979); *Brewer v. Southeastern Fidelity Ins. Co.,* 147 Ga. App. 562, 564 (249 SE2d 668) (1978).

2. In light of this holding, we need not reach Birnbrey's remaining enumerations of error.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 12, 2000 —
RECONSIDERATION DENIED JUNE 30, 2000

*Greer, Klosik & Daugherty, Hollis C. Cobb,* for appellant.
*Joe A. Weeks,* for appellees.
*Welch, Spell, Reemsnyder, Pless & Davis, Ronald D. Reemsnyder, Lisa K. Whitfield,* amici curiae.