A03A0178. WRIGHT v. PINE HILLS COUNTRY CLUB, INC.
A03A0179. WRIGHT v. NEWSPAPER HOLDINGS, INC. et al.
(583 SE2d 569)

ADAMS, Judge.

After consuming red wine at the Crisp County Watermelon Festival gala event located at Pine Hills Country Club, newspaper reporter Michele Yawn attempted to drive home. On her way, she inexplicably stopped on a state highway facing oncoming traffic and turned off her lights. A car driven by Heather Katrina Wright collided with Yawn's car, killing Yawn and seriously injuring Wright. Wright brought suit against various parties, and she now appeals the trial court's grant of summary judgment in favor of the country club and Yawn's employer.

Construed in favor of Wright, the facts show that on July 6, 1999, Yawn was a reporter for the Americus Times-Recorder, which, together with the Cordele Dispatch, was owned by Thomson Newspapers, Inc. On the evening of July 6, Yawn was not on duty or assigned to work at the festival; rather, she went to the event on her own time. Tony Britt, a reporter for the Cordele Dispatch, was assigned to cover the event. When he arrived and saw that Yawn happened to be there with a camera, the two agreed that she would assume responsibility for the event for the two sister newspapers; Britt then left.

The event was staffed by volunteers. One volunteer bartender averred that she served Yawn two, six-ounce glasses of red wine in the early part of the event, which ran from 7:30 to 10:30 p.m. That bartender and a second bartender both averred that they did not see Yawn visibly intoxicated during the event and that they did not know that Yawn would be operating a motor vehicle when she left. Both bartenders left the premises at 10:30 p.m.

Frank McKinney attended the event, saw Yawn there, and was in and out of her company over approximately a three-hour period of time, during and immediately following the party. To the best of his recollection, Yawn drank two glasses of red wine during that time and she did not appear intoxicated at any point that evening. At the end of the evening, he walked her to her car, during which she walked down a steep hill without stumbling. McKinney averred that he "did not feel any concern that she was impaired or unable to drive her automobile." Disputed evidence that will be addressed below suggests that after the event ended at 10:30 p.m., Yawn and McKinney

spent time together at the country club bar until 11:45 p.m., and that Yawn had some red wine there. The accident occurred between 11:50 p.m. and 12:10 a.m.

Medical tests performed on Yawn after her death showed her blood alcohol level to be 0.18 grams percent. The autopsy revealed that her alimentary tract "contained approximately 200 cc of pink fluid mixed with partially digested food which has a very strong odor of alcoholic beverage."

Wright brought suit against the country club under the Dram Shop Act and against Thomson Newspapers and its successor in interest on the grounds of respondeat superior. In Case No. A03A0178, we address the appeal of the trial court's grant of the country club's motion for summary judgment. In Case No. A03A0179, we address the grant of summary judgment in favor of Yawn's employer.

## Case No. A03A0178

As an initial matter, Wright contends the trial court erred by ruling that portions of an affidavit by Bill Runge were inadmissible hearsay. In that affidavit, Runge testified that McKinney told him that after the event ended at 10:30 p.m., Yawn and McKinney spent time together at the country club bar until 11:45 p.m. and that Yawn had some red wine there. Wright argues that the statements attributed to McKinney are admissible as prior inconsistent statements of a witness. See *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982). But, as shown below, even if the additional statements attributed to McKinney were admissible, the result would not change.

Under OCGA § 51-1-40 a person may become liable for injury and damage proximately caused by serving alcoholic beverages "to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle." The trial court found that the unrebutted evidence showed that the country club did not serve Yawn alcoholic beverages when she was in a state of noticeable intoxication and that the country club did not know that Yawn would soon be driving a motor vehicle. Wright challenges both findings.

The only evidence Wright presented to rebut these facts is the alcohol content of Yawn's blood and the description of the contents of her alimentary tract after the accident. Wright contends that under *Hulsey v. Northside Equities*, 249 Ga. App. 474 (548 SE2d 41) (2001), aff'd, *Northside Equities v. Hulsey*, 275 Ga. 364 (567 SE2d 4) (2002), these facts are sufficient to rebut the evidence offered by the country club.

In *Hulsey*, Rebecca Greene, a stripper, caused a fatal accident after consuming five or six drinks during work at an establishment

that allowed drinking on the job. In response to a suit by the accident victim, Greene's employer submitted affidavits from several employees averring that Greene was not noticeably intoxicated while at work. *Hulsey*, 249 Ga. App. at 476 (2). In response, the plaintiff submitted the affidavit of an expert concerning the absorption and metabolism of ethyl alcohol by persons who drink alcoholic beverages. "The expert calculated Greene's probable blood alcohol level at the time of the collision with the victim as being as much as .21 grams percent and opined that various manifestations of intoxication would appear at that level and that those manifestations would vary with the person's history of drinking." *Hulsey*, 275 Ga. 364. This Court concluded that the evidence of Greene's blood alcohol level and the expert testimony were sufficient to create an issue of fact regarding whether Greene was noticeably intoxicated at the time that she was last served alcoholic beverages. *Hulsey*, 249 Ga. App. at 477-478 (2). The Supreme Court affirmed this Court's decision. *Hulsey*, 275 Ga. 364.

But here, Wright has not presented any expert testimony to supplement the evidence of Yawn's post-death blood alcohol level or to explain the liquid found in Yawn's alimentary tract. She has submitted the coroner's affidavit, but he simply testified that the attachments to his affidavit were true and correct copies of the autopsy and related reports. Regardless of when she last had a drink or what was in her stomach at the time of her death, there is simply no expert testimony to contradict the testimony presented by McKinney and the two volunteer bartenders that Yawn was not noticeably intoxicated at the time that she was served alcohol. Unlike in *Hulsey*, in this case there is no expert opinion that Yawn actually drank six or more drinks, nor an expert opinion on blood absorption for a person of Yawn's weight and past pattern of alcohol consumption. And, there is no opinion about the changes in her blood alcohol level over time, which could create an issue as to whether Yawn would have appeared intoxicated at the time she was last served wine. Accordingly, *Hulsey* is not controlling. In addition, Wright has not presented any evidence to show that anyone at the club knew that Yawn would soon be driving a motor vehicle at the time that she was served alcohol.

The trial court reasoned that "the necessary expert testimony is missing from the instant case and the Court cannot assume expert testimony." We hold that the trial court correctly granted summary judgment in favor of Pine Hills Country Club. See *Birnbrey, Minsk & Minsk, LLC v. Yirga*, 244 Ga. App. 726, 728-729 (1) (535 SE2d 792) (2000); *McElroy v. Cody*, 210 Ga. App. 201, 202-203 (435 SE2d 618) (1993). See also *Taylor v. N. I. L., Inc.*, 221 Ga. App. 99, 101 (470 SE2d 491) (1996) (regarding whether the defendant had knowledge that the person would soon be driving).

## Case No. A03A0179

Wright contends that Thomson Newspapers and its successor in interest, Newspaper Holdings, Inc., are liable for the injuries caused by their servant Yawn.

"When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master. [Cits.]" *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979). With regard to commuting to and from work, the general rule is that the employee is acting for himself at that time and, therefore, the employer is not to be held liable for an injury occurring during that time. *Jones v. Aldrich Co.*, 188 Ga. App. 581, 583 (1) (373 SE2d 649) (1988).

However, there is an exception to the general rule where the employee undertakes a special mission at the direction of the employer. *Aldrich Co.*, 188 Ga. App. at 583 (1). As stated in *Aldrich Co.*,

> Where the employee, before or after customary working hours, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer, and an injury arises en route from the home to the place where the work is performed, or from the place of performance of the work to the home, such injury is considered as arising out of and in the course of the employment.

(Citations and punctuation omitted.) Id.

Wright contends that Yawn was acting in the scope of her employment because she was on a special mission of her employer to cover the Watermelon Festival. But, the special mission rule does not apply in this case because Yawn was not acting at the request of her employer but on her own volition when she agreed with Britt to cover the event on behalf of the newspaper.

*Patterson v. Southeastern Newspapers*, 243 Ga. App. 241, 242 (1) (533 SE2d 119) (2000), makes clear that application of the special mission exception requires that the errand or mission itself be a special or uncustomary one, made at the employer's request or direction. In that case, this Court held that there was a factual issue regarding whether the employee was on a special mission at the time of the accident because the facts showed that the employer had called him on short notice by special request to respond to a particular need at a place other than his normally assigned location. Id. In the present

case, Yawn went to the Watermelon Festival on her own volition. She traveled to the event outside of the scope of her employment and planned to attend the event and return home outside of the scope of her employment. Her employer never instructed her to cover the event; rather, she agreed to cover the event at the request of the assigned reporter.

Wright's reliance on *Aldrich Co.* is misplaced. In that case, although the employee was held to be acting within the scope of her employment on her trip home from work, she was not returning from her job site, but from a special errand made on behalf of and at the request of her employer. *Aldrich Co.*, 188 Ga. App. at 583 (1). Here, Yawn's employer had not sent her on a special errand. Even though Yawn may have volunteered to cover the event for Britt, her employer was not aware of her actions, and without other evidence, her employer cannot be said to have authorized her to unilaterally determine when she would be operating within the scope of employment on a special mission. See *Hargett's Telephone Contractors v. McKeehan*, 228 Ga. App. 168, 171 (491 SE2d 391) (1997) (travel to and from work on nonwork day not made at request of employer is not within scope of employment).

Based on the undisputed facts construed in favor of Wright, the trial court correctly concluded that Yawn was not acting within the scope of her employment after she left the Watermelon Festival.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2003.

*Walters & Pujadas, C. Vinson Walters II, Thomas E. Pujadas, Jay, Sherrell, Smith & Braddy, Robert E. Sherrell*, for appellant.

*Chambless, Higdon & Carson, Mary M. Katz*, for appellee (case no. A03A0178).

*Langdale & Vallotton, William P. Langdale III, Miller, Cowart, Cates & Howe, Craig N. Cowart, Perry & Walters, E. B. Wilkin*, for appellees (case no. A03A0179).