A03A2180. WILLBANKS et al. v. SUGARLOAF CAFÉ, INC.
(597 SE2d 410)

ELDRIDGE, Judge.

Rebecca Willbanks, individually and as parent as well as next friend of Amanda Paige Lawrence, formerly a minor, and Amanda Paige Lawrence appeal from the grant of summary judgment for Sugarloaf Café, Inc. d/b/a Buffalo's Café under the Georgia "Dram

Shop" Act. Finding the existence of material issues of fact for jury determination, we reverse.

On April 11, 2000, Jennifer Leigh Phillips, while visibly intoxicated after being served with alcohol at Buffalo's Café, had a collision with the car occupied by Willbanks and Lawrence. The evidence gives rise to the inference that, while in a visibly intoxicated state, Phillips was served alcohol at Buffalo's Café and that she was driving while intoxicated at the time of the collision. Phillips was convicted of drunk driving in causing the serious injuries.

Willbanks and Lawrence sued Phillips and Buffalo's Café for negligence under the Dram Shop Act.[1] Buffalo's Café moved for summary judgment, which was granted. On appeal, this grant of summary judgment is reviewed de novo to determine whether any evidence or reasonable inference creates a material issue of fact for jury determination. "Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case."[2] In this case, we find that the circumstantial evidence and the reasonable inferences raise material issues of fact for jury determination under both elements of OCGA § 51-1-40.

Buffalo's Café was located in an area accessible only by vehicle, and Heidi Sarnese, a co-worker, drove Phillips there, because Phillips left her car parked at work while they went to Buffalo's Café. Phillips, Sarnese, Todd Dickens, and other co-workers were at Buffalo's Café for an after-work party. Phillips was served approximately ten glasses of wine by the bartender. Also, Dickens was served ten glasses of wine. On testifying, the bartender could not remember the night in question or what he had served Phillips or to others at the party. The toxicologist who testified gave the opinion that all the partiers who had continued to drink until 10:00 p.m. would have had a blood alcohol level well above the legal driving limit and would be visibly intoxicated, which was sufficient to create a jury question, because no one was capable of driving.[3] The toxicologist further testified that, in his opinion, the perception and judgment of all of the partiers were so affected by their intoxication that they could not determine if Phillips was visibly intoxicated. While intoxicated, Dickens drove Phillips back to work to pick up her car so that she could drive home. While attempting to drive home, Phillips crossed over the centerline and hit

---

[1] OCGA § 51-1-40 (b).

[2] (Citations and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 251 (510 SE2d 541) (1998).

[3] *Northside Equities v. Hulsey*, 275 Ga. 364, 365 (567 SE2d 4) (2002).

the Willbanks and Lawrence vehicle head-on, causing them serious injuries. Phillips has a total memory loss as to that night due to the collision.

Under the Dram Shop Act, if two conditions are met, then the common law of supervening proximate cause is changed and the seller or provider of alcohol can be held jointly liable with the intoxicated driver:

> [A] person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is . . . in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such . . . person when the sale, furnishing, or serving is the proximate cause of such injury or damage.

OCGA § 51-1-40 (b). Thus, Willbanks must prove: (1) that the seller, furnisher, or server knew that the patron was visibly intoxicated when furnished with alcohol; and (2) that the seller, furnisher, or server knew that the intoxicated person would drive soon after leaving.[4] If the two prongs of this test are satisfied, then Buffalo's Café may be held liable where intoxication was the proximate cause of the collision.

The trial court found that there was sufficient evidence for a jury to find that Buffalo's Café furnished alcohol to a visibly intoxicated person, but held that there was insufficient evidence of knowledge that such visibly intoxicated person would soon drive. "[The plaintiff's] evidence regarding [the intoxicated driver's] level of intoxication, taken together with expert testimony that such a level of intoxication would [normally] produce manifestations of intoxication, was sufficient to create a question of fact and, thereby, to avoid summary judgment."[5] Based upon the blood alcohol level determined by the hospital and calculating backward to the time when Phillips was being served, the toxicologist was of the opinion that Phillips was visibly intoxicated and had been served at least ten glasses of wine. The co-workers testified that Phillips had at least five glasses of zinfandel at Buffalo's Café. However, the co-workers were themselves too intoxicated to judge Phillips' level of visible intoxication and were too intoxicated themselves to drive.

The trial court erred in not finding an issue for the jury's determination as to Buffalo's Café's knowledge that Phillips would

---

[4] Id. at 364.
[5] Id. at 365.

soon drive, since the only way that she could leave the remote location was for her or some other visibly intoxicated person in her group to drive. Phillips and all of her co-workers were visibly intoxicated, and someone had to drive upon leaving this remote location. Further, there was no evidence that anyone asked that Buffalo's Café call for a cab for Phillips or anyone else.

Even if a visibly intoxicated co-worker drove the visibly intoxicated Phillips away, several reasonable inferences arise: that someone from the group would drive Phillips to her car; that the visibly intoxicated co-worker would realize their level of intoxication and negligently allow the intoxicated Phillips to drive; or that the visibly intoxicated co-worker would drive Phillips home. Two of these equally reasonable inferences would satisfy the second prong of the Dram Shop test, because Buffalo's Café furnished alcohol to a visibly intoxicated Phillips and to her visibly intoxicated co-workers who would drive soon after being furnished with alcohol. The evidence showed that Dickens had consumed ten glasses of wine prior to driving Phillips to her car and was visibly intoxicated. From such evidence a jury could infer that Dickens was too intoxicated to drive and that he might relinquish the wheel to Phillips or that he would drive her to her car at work, as he did. The evidence with all reasonable inferences raises the jury question as to the knowledge of Buffalo's Café that Phillips, Dickens, or both would soon drive after being served in a visibly intoxicated state.

The intent of the General Assembly was to make the server of alcohol to a visibly intoxicated person liable when it was known that the visibly intoxicated person would soon drive after being served. *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 814 (1) (479 SE2d 401) (1996). "[I]f [a bartender] in the exercise of reasonable care should have known that the recipient of the alcohol would be driving soon, he or she will be deemed to have knowledge of that fact." (Citation and punctuation omitted.) Id. at 814 (2). "[A] construction of the Act requiring *actual* knowledge would render the Act an ineffective sanction, since only when the defendant [has] admitted its own knowledge could the plaintiff prevail." (Citation and punctuation omitted; emphasis in original.) Id. at 814-815. Therefore, where there is any evidence from which to infer that the server should have known the visibly intoxicated person would be driving at some subsequent time after leaving, such evidence raises a jury issue as to the second prong of the Dram Shop Act.

While there was only slight evidence and reasonable inferences as to Buffalo's Café's knowledge of a visibly intoxicated person likely to drive soon after being served alcohol, slight evidence and reasonable inferences require the denial of summary judgment for jury

resolution of such issue in this case.[6] Since the evidence showed that both Dickens and Phillips were visibly intoxicated when Dickens drove away, then there exists a jury question as to whether Phillips' later driving was too remote for proximate causation. When there exists any evidence as to proof of an essential element of the cause of action, the trial court should not substitute his or her judgment on such evidentiary issue for the jury.[7]

*Judgment reversed. Johnson, P. J., Ruffin, P. J., and Phipps, J., concur. Blackburn, P. J., Ellington and Mikell, JJ., dissent.*

MIKELL, Judge, dissenting.

The motion for reconsideration filed by Sugarloaf Café, Inc. d/b/a Buffalo's Café ("Buffalo's") compels me to revisit the facts of this case. I respectfully dissent from the majority's determination that a jury issue remains on whether Buffalo's knew that, when Phillips left the bar, she would soon drive a motor vehicle.

OCGA § 51-1-40 (b) provides that

> a person . . . who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage.

For purposes of its motion for summary judgment, Buffalo's conceded the first prong of OCGA § 51-1-40 (b). As to the second prong, the majority finds that "the only way that [Phillips] could leave the remote location was for her or some other visibly intoxicated person in her group to drive," thus creating a jury issue as to whether Buffalo's knew, or should have known, that Phillips would soon drive.

This reasoning is flawed. The record contains no evidence in that Buffalo's was in a "remote" location, accessible only by car.[8] The co-worker who drove Phillips to Buffalo's, Heidi Sarnese, testified that it was located in a shopping center immediately adjacent to their office building, and that it would take "about two minutes" to walk there. Other co-workers who joined Phillips at Buffalo's gave similar testimony. The shopping center also was home to Kroger, Frontera's Mexican Restaurant, and Wendy's. Todd Dickens testified that he

---

[6] *Morrison v. J. H. Harvey Co.*, 256 Ga. App. 38, 40 (2) (567 SE2d 370) (2002).

[7] *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 773 (4) (531 SE2d 200) (2000).

[8] "Remote" is defined as "out of the way or secluded." Webster's New Collegiate Dictionary (1975), p. 978.

was sure other co-workers had walked to Buffalo's.

The majority relies on the affidavit of the plaintiffs' expert witness, who noted that Buffalo's is in a shopping center located at the intersection of Sugarloaf Parkway and Meadow Church Road; that those roads are not conducive to walking traffic; that the area is light industrial, surrounded by only office parks and businesses; that the closest housing areas are at least seven-tenths of a mile away; that these housing developments are upscale, and their residents would not walk to nearby businesses; and that the area is not served by public transportation. The expert thus concluded that "the [Buffalo's] managers, servers and bartenders knew all their customers arrived at and left the bar by automobile."

The expert's testimony does not support an inference, sufficient to survive summary judgment, that Buffalo's had knowledge that Phillips would soon be driving a motor vehicle at the time that she was served alcohol.[9] The defense presented uncontradicted evidence that Phillips did not drive a vehicle to or from Buffalo's. The depositions of Phillips's co-workers establish that Phillips arrived at Buffalo's as a passenger in Sarnese's vehicle and left as a passenger in Dickens's vehicle. Dickens drove Phillips to her place of employment where she exited his vehicle and got behind the wheel of her own automobile. The expert's opinion that Buffalo's managers, servers, and bartenders knew all their customers arrived at and left the bar by automobile is insufficient to contradict the direct, positive testimony that Phillips did not drive to or from the restaurant. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."[10]

---

[9] See, e.g., *Riley v. H & H Operations*, 263 Ga. 652, 656 (436 SE2d 659) (1993) (Clarke, C. J., dissenting); *Hodges v. Erickson*, 264 Ga. App. 516 (591 SE2d 360) (2003) (no evidence that party hosts knew or should have known that intoxicated party guest, who agreed to stay at hosts' home and put his car keys back in his pocket, would soon be driving); *Wright v. Pine Hills Country Club*, 261 Ga. App. 748 (583 SE2d 569) (2003) (bartenders who served patron averred that they did not see patron visibly intoxicated and did not know that she would be driving when she left, there was insufficient evidence to prove second prong). Compare *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 815 (2) (479 SE2d 401) (1996) (finding evidence that the defendant motel bar should have known that the patron would be driving: the patron arrived at the motel to pick up a second patron, who did not have a vehicle; the patron, while drinking with the motel manager, told the second patron several times " 'let's go. Come on and let's go' "; the motel's bartender went out to the patron's truck, awakened the patron, and asked him to help with a third patron, who had fallen; and the desk clerk observed the patron assist the third patron to the truck, get in the truck with the other passengers, and leave the motel).

[10] (Citation and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 89 (1) (586 SE2d 633) (2003). See also *Furlong v. Dyal*, 246 Ga. App. 122, 123-124 (1) (539 SE2d 836) (2000); *Page v. Atlanta Center Ltd.*, 219 Ga. App. 422, 424 (465 SE2d 456) (1995) (when a party is relying on inferences to prove a point, not only must those inferences tend in some proximate degree to

As the motion for reconsideration correctly points out, the majority opinion places an affirmative duty on providers of alcohol to determine the method by which a patron plans to depart the business establishment, *and* how that patron plans eventually to get home. That affirmative duty exceeds the duty established by the legislature.

Because the plaintiffs failed to come forward with evidence that Buffalo's or its employees knew or reasonably should have known that Phillips would soon be driving after leaving the restaurant, the trial court did not err in granting summary judgment to Buffalo's.

I am authorized to state that Presiding Judge Blackburn and Judge Ellington join in this dissent.

DECIDED JANUARY 23, 2004 —
RECONSIDERATION DENIED MARCH 23, 2004 — 

*Ralph E. Hughes*, for appellants.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, J. Kenneth Moorman, Rachel A. Fuerst, Cobb, Grabbe, Spillers & Irwin, Larry G. Cobb*, for appellee.

---

establish the conclusion sought, but must also render less probable all inconsistent conclusions); *Cohen v. Hartlage*, 179 Ga. App. 847, 851 (348 SE2d 331) (1986) (an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility).