A05A1186. KARWACKI et al. v. GEORGIA DEPARTMENT OF
TRANSPORTATION.
(624 SE2d 171)

RUFFIN, Chief Judge.

On February 1, 1996, 15-year-old Jessica Lynn Karwacki was killed when a car in which she was a passenger collided with a tree. Claiming that the roadway was negligently inspected and maintained, Jessica's parents, David and Laura Karwacki, sued the Georgia Department of Transportation ("DOT") for her wrongful death. DOT subsequently moved for summary judgment, and the trial court granted the motion. For reasons that follow, we reverse.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[1] On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in a light most favorable to the nonmovant.[2]

Viewed in this manner, the evidence shows that, on the day of the collision, Amanda Bond drove Jessica and another friend, Jennifer Wallace, home from school. While traveling north on Georgia Highway 251, Bond lost control of her car and crashed into a tree. Both Jessica and Jennifer were killed.

Tire marks on the highway showed that Bond's car crossed the centerline, left the road on the west side, and struck a tree. The highway was straight, level, and dry. Bond has no memory of how or why she lost control, and it appears that no one else witnessed the wreck.

The day after the collision, David Karwacki visited the scene and observed a tire mark running from the east side of the roadway to the west side, leading directly to the tree struck by Bond's car. Approximately 50 feet before the tire mark began, he also noticed a "freshly made gouge" on the east-side shoulder. At that point, the shoulder adjacent to the road dropped off approximately eight to ten inches.

---

[1] See *Mitchell v. Austin*, 261 Ga. App. 585 (583 SE2d 249) (2003).
[2] See id.

Two other individuals also saw the gouge, as well as the significant drop-off near the gouge, in the days following the collision. And one witness observed scraping damage on the underside of Bond's car, behind the front passenger wheel.

Claiming that Bond initially lost control of her car when the passenger-side tires dropped off the east side of the roadway, the Karwackis sued DOT for negligent inspection and maintenance of the highway and shoulder. According to the complaint, "[t]he shoulder on the east side of Georgia Highway 251, at and near the location of the accident site, contained holes, ruts, and drop-offs, which defects are the proximate cause [of] the said collision."

To support their claim, the Karwackis offered expert testimony from two engineers. Dr. Robert Roberts, who is experienced in road construction and maintenance, testified that DOT failed to properly maintain the highway shoulder where the collision occurred, asserting that "[i]t is a deviation from the standard of care to allow a [drop-off] in excess of two inches from the paved portion of the roadway to the shoulder of the roadway." Roberts further stated that, in his opinion, Bond's front wheel moved off the roadway onto the east-side shoulder, which was over seven inches below the roadway, and this severe drop-off caused her to lose control of the vehicle. Herman Hill, an accident reconstructionist, similarly testified that Bond lost control when she encountered the steep drop-off on the east side of the highway. Hill explained:

> It is my opinion that Amanda Bond left the [east side of the] roadway at a point where the gouge mark has been identified by photos and witnesses and where the drop off is approximately 7.5 inches. Based on the tire marks shown in photos the [vehicle] returned to the road surface and began to rotate counter clockwise toward the west shoulder.

According to Hill, the pattern of tire marks — which showed that the vehicle rotated across the road — is "classically associate[d] with an edge drop-off maneuver." He further stated that the available evidence "adds up to an edge drop-off phenomenon. It does not add up to a driver driving very fast and for whatever reason attempting to swerve suddenly." And he testified that "the most probable and the most likely and the most engineering feasible [sic] description of this wreck is that [Bond] went off the road [on the east side] and came back on." Finally, he concluded that, given the location of the tire marks on the road, the gouge seen by David Karwacki and others was made by Bond's car as it left the east side of the roadway.

DOT moved for summary judgment, asserting that the Karwackis presented no *direct* evidence that Bond's car traveled off the east side

of the road. It noted that John Kidd, the state trooper who responded to the collision scene, did not observe any evidence that Bond's car left the roadway at that point. Trooper Kidd testified that his examination of the scene revealed "no gouge mark or any other indication on the road, east shoulder, or ground that the car ever left the road on the east shoulder." Photographs taken the day of the collision by another responding officer, Ranger Harrison Ruger, also do not show a gouge.

Concluding that the "direct and positive evidence" demonstrated that the gouge mark did not exist immediately following the collision, the trial court granted summary judgment to DOT. According to the trial court, any determination that Bond's car caused the gouge would be speculation because the mark "could have reasonably been caused by another vehicle at another time" — including *after* the collision. In short, the trial court found no probative evidence that Bond's car left the roadway on the east side, removing any causal link between the allegedly defective shoulder and the collision.

We agree that Trooper Kidd's testimony regarding the road condition on the day of the collision constitutes direct evidence that Bond's car did not create the gouge mark.[3] And, as noted by DOT, the Karwackis offered no competing direct evidence. Under Georgia law, however:

> Circumstantial evidence may be sufficient to create a jury issue in the face of direct evidence to the contrary. Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.[4]

Several witnesses presented by the Karwackis testified that they saw a gouge on the east-side roadway in the days following the accident. We recognize that this testimony, which sheds no light on *when* the gouge occurred, is not inconsistent with DOT's direct proof

---

[3] Compare OCGA § 24-1-1 (3) (" '[d]irect evidence' means evidence which immediately points to the question at issue") with OCGA § 24-1-1 (4) (" 'circumstantial evidence' means evidence which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed").

[4] *Jones v. Bd. of Regents &c. of Ga.*, 262 Ga. App. 75, 81 (4) (585 SE2d 138) (2003). See also *Withrow Timber Co. v. Blackburn*, 244 Ga. 549, 552-553 (261 SE2d 361) (1979).

regarding the gouge. On the contrary, such testimony can be construed consistently with DOT's evidence to conclude that another car caused the gouge *after* the collision.[5]

The Karwackis, however, did not rely solely on this arguably consistent circumstantial evidence. They also presented expert testimony that, given the location of the gouge and the tire marks created when Bond lost control of her car, Bond's car caused the gouge. Moreover, after reviewing the available evidence, including Trooper Kidd's testimony and Ranger Ruger's scene photographs, Hill concluded that, in his expert opinion, Bond's car left the east side of the road. He noted that the path of the car's tire marks "is exactly what [one would] see" when a vehicle moves off and then reenters the road. And both Hill and Roberts testified that the severe drop-off Bond encountered when she left the east-side roadway caused her to lose control of the car.

DOT asserts that, in reaching their conclusions, the Karwackis' experts assumed that Bond's car created the gouge in the roadway. It further argues that, since the uncontradicted direct evidence establishes that no gouge existed immediately after the wreck, that assumption — and any reliance on the opinion evidence — "must fail." Again, however, Hill offered expert testimony that, given the physical evidence, Bond's car *did* create the gouge, contradicting DOT's direct evidence. And perhaps more importantly, Hill testified that the pattern of tire marks on the road — not the gouge — showed that Bond's car dropped off the east roadway. Even without reference to the gouge, therefore, the expert testimony raises a question of fact as to causation.

The Karwackis' opinion evidence contradicts DOT's proof that Bond's car never left the road on the east side. Accordingly, despite Trooper Kidd's testimony and Ranger Ruger's scene photographs, the Karwackis presented sufficient probative evidence of causation, precluding summary judgment.[6]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

---

[5] See *First Citizens Bank of Clayton County v. All-Lift of Ga.*, 251 Ga. App. 484, 486 (555 SE2d 1) (2001) (" 'In ruling on a motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence.' ").

[6] See *Northside Equities v. Hulsey*, 275 Ga. 364, 364-365 (567 SE2d 4) (2002); *Sewell Sales & Svc. v. Travelers Indem. of America*, 255 Ga. App. 531, 532 (1) (566 SE2d 346) (2002); *Winder v. Paul Light's Buckhead Jeep Eagle Chrysler Plymouth*, 249 Ga. App. 707, 712-713 (3) (549 SE2d 515) (2001); *Furlong v. Dyal*, 246 Ga. App. 122, 123-125 (1) (539 SE2d 836) (2000).

DECIDED NOVEMBER 8, 2005 —
RECONSIDERATION DENIED DECEMBER 5, 2005 —

*Phillips & Kitchings, Richard Phillips, James R. Coppage*, for appellants.

*Thurbert E. Baker, Attorney General, Reagan W. Dean, Claude M. Sitton, Assistant Attorneys General*, for appellee.