## A10A0244. SHIN v. ESTATE OF CAMACHO et al.
(690 SE2d 444)

ELLINGTON, Judge.

On July 3, 2005, Seung Park, while intoxicated, drove away from a party at the home of Ki Soo Shin, ran a red light, and crashed his van into the car that Stacey Camacho was driving, fatally injuring Stacey Camacho and injuring her minor son, Jacob. The estate of Stacey Camacho and Jesus Camacho as Jacob Camacho's next friend ("the Camachos") brought this Dram Shop action against Shin in the State Court of Gwinnett County. After a hearing, the trial court denied Shin's motion for summary judgment. We granted Shin's ensuing application for an interlocutory appeal and, for the reasons explained below, reverse the trial court's ruling.

> When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence, construing that evidence and all reasonable inferences and conclusions therefrom in the light most favorable to the nonmovant. Additionally, a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case.

(Citations and punctuation omitted.) *Becks v. Pierce*, 282 Ga. App. 229 (638 SE2d 390) (2006).

Viewed in the light most favorable to the Camachos, the undisputed evidence shows the following. Shin and his wife hosted a barbeque on July 3, 2005, attended by about ten adults and a few children. Park drove to the party with Steve Lee as his passenger; they arrived at around 4:30 p.m. Shin provided sake (Japanese-style rice wine) for the party and served it during dinner. During dinner, Park drank two bottles of beer and three to five servings of sake.

As the guests sat at the table, a conversation Park was having with another guest evolved into an argument. As the argument became more heated, the other guest pushed or hit Park in the abdomen. After breaking up the fight, Shin concluded that Park had become intoxicated. Shin's wife also concluded that Park had become intoxicated at that point, because he used foul language during the argument, when women and children were present, and because he became red in the face.

Park deposed that he drank two glasses of soju (a Korean liquor similar to vodka) after the fight because he was angry. He did not

VALELAW LIBRARY

remember who poured the soju. Shin deposed, however, that he did not see Park drink soju or any other alcoholic beverage after the fight.

As a result of the fight, the party came to an early end, and most of the guests went home almost immediately. After the fight, Shin put the alcoholic beverages away. Park began helping Shin's wife clean up, and she urged him to rest on the couch before driving home, or to let her drive him home, because he had been drinking. Shin also tried to get Park to wait until he became sober before driving and told him to stay and sleep first. Park acquiesced and lay on the couch to rest. He did not drink anything while he was resting on the couch.

As it was getting dark, the children went outside to light firecrackers and Shin joined them. After Park lay on the couch at least 45 minutes, possibly as long as 90 minutes, his wife called him and asked him to come home soon. Park went outside and, after playing with the children and the firecrackers for a few minutes, told Shin he was leaving and got into his car to drive home. Shin's wife again tried to persuade Park not to leave, and Shin asked Park if he felt fine to drive, but Park responded that he was fine and left.

Shortly before 10:00 p.m., and within 15 minutes of leaving Shin's home, Park ran a red light and crashed his van into the Camachos' car. The parties have stipulated that Park's blood alcohol content was 0.147 percent when tested after an officer arrested Park for driving under the influence.

1. Shin contends, inter alia, that there is an absence of evidence to support an essential element of the Camachos' case, specifically, that he knowingly furnished or served alcoholic beverages to Park when Park was in a state of noticeable intoxication. As a result, Shin contends, the trial court erred in denying his motion for summary judgment.

Under Georgia's Dram Shop Act, "[a] person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons[.]" OCGA § 51-1-40 (b). This broad insulation of those who provide alcoholic beverages from liability for damages inflicted by an intoxicated person[1] arises from

---

[1] See *Delta Airlines v. Townsend*, 279 Ga. 511, 513 (1) (614 SE2d 745) (2005) ("The resulting legal effect [of the Dram Shop Act] is that a provider of alcoholic beverages is insulated from liability to third parties except as provided in [OCGA § 51-1-40 (b)].") (citation and punctuation omitted).

the General Assembly's finding, codified in the Act, that

> ... the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person. . . .

OCGA § 51-1-40 (a).

The Act provides a limited exception to the general rule such that a person

> ... who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such . . . person when the sale, furnishing, or serving is the proximate cause of such injury or damage. . . .

OCGA § 51-1-40 (b).[2] The rationale for this exception to the general rule against host liability is that,

> [w]here one provides alcohol to a noticeably intoxicated individual knowing that he will soon be driving his car, it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone.

(Citation and punctuation omitted.) *Delta Airlines v. Townsend*, 279 Ga. 511, 513 (1) (614 SE2d 745) (2005). A cause of action under OCGA § 51-1-40 (b) is an injured person's exclusive remedy for seeking to impose liability on a provider of alcohol for damages caused by a driver who consumed the alcohol. Id. at 512 (1).

In this case, Shin has shown that there is an absence of evidence to support the first element of the Camacho case; that is, there is no evidence in the record that, when Park was in a state of noticeable intoxication, Shin knowingly furnished alcoholic beverages to him.

---

[2] The Act also authorizes liability to be imposed on ". . . a person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is *not* of lawful drinking age, knowing that such person will soon be driving a motor vehicle. . . ." (Emphasis supplied.) OCGA § 51-1-40 (b). See *Riley v. H & H Operations*, 263 Ga. 652, 653 (1) (436 SE2d 659) (1993).

See *Birnbrey, Minsk & Minsk, LLC v. Yirga*, 244 Ga. App. 726, 728 (1) (535 SE2d 792) (2000) (enumerating the elements of a cause of action under OCGA § 51-1-40 (b)).[3] As outlined above, the only evidence of when Park became noticeably intoxicated (the deposition testimony of Shin and his wife) is that Park's intoxication was first noticeable when he argued belligerently with another guest. Although it is undisputed that Park consumed two glasses of soju after the fight, it is also undisputed that Shin did not personally serve Park the soju, did not see Park consume the soju, and did not have any other reason to know that Park consumed any additional alcoholic beverages after that point when he first became noticeably intoxicated. To the contrary, although we note that Georgia law does not impose a duty on a provider of alcoholic beverages to "prevent an intoxicated person from driving,"[4] the undisputed evidence showed that, after Park's intoxication became apparent, Shin and his wife expressed their concern that he not drive until he became sober, urged him to stay and rest as long as necessary, and offered to drive him home if he could not wait. Because there is no evidence that Shin knew or should have known that Park consumed additional alcoholic beverages after he became noticeably intoxicated, there is no record evidence that Shin knowingly furnished or served alcoholic beverages to a noticeably intoxicated Park.[5] Accordingly, the trial court erred in denying Shin's motion for summary judgment.[6]

2. Given our holding in Division 1, Shin's remaining arguments are moot.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

---

[3] See also *Becks v. Pierce*, 282 Ga. App. at 233 ("[I]f a provider in the exercise of reasonable care should have known both that the recipient of the alcohol was noticeably intoxicated and that the recipient would be driving soon, the provider will be deemed to have knowledge of that fact.") (punctuation, footnote and emphasis omitted).

[4] (Citation and punctuation omitted.) *Delta Airlines v. Townsend*, 279 Ga. at 513 (1).

[5] Because the Act is in derogation of the common law, it must be strictly construed. *Delta Airlines v. Townsend*, 279 Ga. at 512 (1). Strictly construing a statute requires us "to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Punctuation omitted.) *Charter Club &c. v. Walker*, 301 Ga. App. 898, 899 (689 SE2d 344) (2009).

[6] See *Delta Airlines v. Townsend*, 279 Ga. at 515 (1) (absence of evidence that an airline knew or should have known that a passenger whom it served alcohol would soon be driving demanded judgment in favor of the airline); *Becks v. Pierce*, 282 Ga. App. at 233-235 (1) (absence of evidence that the bar employee who served a customer his last drink knew, or in the exercise of reasonable care should have known, that the patron would soon be driving demanded judgment in favor of the bar); *Hodges v. Erickson*, 264 Ga. App. 516, 518-519 (591 SE2d 360) (2003) (absence of evidence that party hosts knew or should have known that an intoxicated party guest would soon be driving, where the guest had agreed to spend the night at the hosts' home, demanded judgment in favor of the hosts); *Birnbrey, Minsk & Minsk, LLC v. Yirga*, 244 Ga. App. at 729-730 (1) (absence of evidence that an employee was noticeably intoxicated when his employer served him alcohol at a company luncheon demanded judgment in favor of the employer).

DECIDED JANUARY 21, 2010 —
RECONSIDERATION DENIED FEBRUARY 9, 2010 — 

*Groth & Makarenko, Paul L. Groth, Laura D. Johnson*, for appellant.

*Charles H. McAleer*, for appellees.