**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 24, 2025**

# In the Court of Appeals of Georgia

A24A1575. SEPID, LLC v. DOCK et al.

A24A1589. SEPID, LLC v. MERCHANT.

DOYLE, Presiding Judge.

These related cases were brought by Tamara Nicole Dock (as next of kin and administrator for the estate of Albert Wilson Dock) (Case No. A24A1575) and Deven Merchant (Case No. A24A1589) against SEPID, LLC, d/b/a GATA's Sports Bar and Grill ("GATA's") seeking damages for wrongful death and personal injuries based on a collision caused by Antoine McLendon after he had been served alcohol by GATA's. GATA's now appeals from the denial of summary judgment in each case, arguing that the trial court erred by ruling that a fact question remained as to its

liability under OCGA § 51-1-40 ("the Dram Shop Act").[1] Because we agree that the record fails to demonstrate a triable issue as to whether GATA's knew that McLendon would "soon" be driving, we reverse in each case.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that in January 2019, Trevor Jenkins and McLendon were serving in the U. S. Army and stationed at Fort Stewart. One evening, they decided to go to a bar to play pool; Jenkins was underage, so he drove McLendon to the bar. Upon arrival, Jenkins's hand was marked with an "X" to designate him as a non-drinker due to his age. They remained at the bar for two or three hours, and McLendon got "a little drunk." Some other patrons began arguing with McLendon, who "got mad," and the manager eventually asked McLendon to

---

[1] Because each case turns on the same issues based on the same record, we have consolidated them for review.

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

leave. Jenkins and McLendon complied, and at that point, McLendon "was definitely a little drunk." They drove to a second bar, GATA's, and Jenkins "ended up dropping [McLendon] off [in the parking lot] because . . . I wasn't even sure if I could even walk in there being underage." After learning that McLendon's girlfriend, Amanda Smith, was coming to meet McLendon at GATA's, Jenkins returned to the barracks.

McLendon stayed at GATA's and consumed at least three drinks while he waited approximately two hours for Smith to arrive. According to Smith, McLendon was "very" drunk and "wobbling when he was walking." Smith took McLendon's drink from him because she believed he had had too much to drink, and shortly thereafter, the bouncer came over and told McLendon that he had been cut off. Smith replied, "good."[3]

For the next hour, Smith sat with McLendon, who was "wobbly," but laughing and joking with Smith; "he wasn't . . . laid out or . . . slumped over." After Smith returned from a visit to the bathroom, McLendon started arguing with Smith and

---

[3] Smith deposed that McLendon drank water for the remainder of the night, but McLendon has no recollection of drinking water. McLendon has no recollection regarding any conversations with bartenders or servers at GATA's.

followed her out to the parking lot. After a few minutes of further arguing, McLendon went back inside the bar, and Smith left without him around 1:00 a.m.

After he realized that Smith had left, McLendon called Jenkins to pick him up. Jenkins, who was back at the barracks, dressed, drove to GATA's, and met McLendon in the parking lot. Jenkins then drove McLendon back to the barracks, smoked a cigarette with him in the parking lot, and watched as he walked up to his residential building: "I saw him walk over to his module. I made sure he was going in all right and he was good, and I went ahead back to my room and went back to sleep."

At some point after returning to the barracks, McLendon decided to get into his own car and drive to see Smith. After making it to Smith's driveway, McLendon changed his mind and drove back to the barracks without contacting Smith. On the trip home, while traveling at a high rate of speed, he rear-ended a vehicle with three teenage occupants: Albert Dock (who was killed), Deven Merchant, and David Jackson. He was still intoxicated at the time of the crash.

Based on these events, in Case No. A24A1575, Tamara Dock sued McLendon and GATA's, alleging claims for personal injury and wrongful death. In Case No. A24A1589, Merchant also sued GATA's, seeking damages arising from injuries he

sustained in the wreck. In both cases, the plaintiffs allege that GATA's employees wrongfully served McLendon alcohol when he was intoxicated and were aware he would drive soon.

Following discovery, GATA's moved for summary judgment in each case, contending that the plaintiffs could not meet their burden to demonstrate liability under Georgia's Dram Shop Act.[4] After a hearing, the trial court denied the motion in a cursory order, certifying its ruling for immediate review. This Court granted GATA's applications for interlocutory review.

1. On apeal GATA's argues that it is entitled to summary judgment because the evidence in the record does not give rise to a fact question as to whether it knew that McLendon would drive soon, as required under the Dram Shop Act. We agree.

The Dram Shop Act addresses the potential liability of a person who provides alcohol to someone who then injures another person due to his intoxication.[5] The Act provides, in relevant part:

> (a) The General Assembly finds and declares that the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such

---

[4] OCGA § 51-1-40.

[5] See id.

beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person, except as otherwise provided in subsection (b) of this Code section.

(b) A person who sells, furnishes, or serves alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury, death, or damage caused by or resulting from the intoxication of such person, including injury or death to other persons; provided, however, a person who . . . knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, *knowing that such person will soon be driving a motor vehicle*,[6] may become liable for injury or damage caused by or resulting from the intoxication of such . . . person when the sale, furnishing, or serving is the proximate cause of such injury or damage.[7]

Based on this, to pursue a cause of action under the Dram Shop Act, the plaintiffs are required to adduce evidence demonstrating that GATA's knew "that [McLendon] '[would] soon be driving a motor vehicle.' 'Soon' means '[i]n the near future; shortly.'"[8]

---

[6] (Emphasis supplied.)

[7] Id.

[8] *Delta Airlines, Inc. v. Townsend*, 279 Ga. 511, 513 (1) (614 SE2d 745) (2005), quoting The American Heritage Dictionary (2d College Edition), p. 1165.

> [T]he Act does not require that the person selling, furnishing, or serving alcohol have actual knowledge that the patron was soon to drive. Rather, if a provider in the exercise of reasonable care should have known both that the recipient of the alcohol was noticeably intoxicated and that the recipient would be driving soon, the provider will be deemed to have knowledge of that fact.[9]

And "[w]hile constructive knowledge will suffice, providers of alcohol do not have an affirmative duty to determine the method by which a patron plans to depart the business establishment, and how that patron plans eventually to get home."[10]

Here, McLendon does not recall any relevant interactions with staff, and there is no evidence that McLendon had keys visible or otherwise represented that he would be driving.[11] To the contrary, it is undisputed that at all times until he returned home from GATA's, McLendon was transported by a designated driver, Jenkins, who consumed no alcohol that night.

---

[9] (Citation, punctuation, and emphasis omitted.) *Becks v. Pierce*, 282 Ga. App. 229, 233 (1) (638 SE2d 390) (2006).

[10] (Citation, punctuation, and emphasis omitted.) *Monterrey Mex, Inc. v. Collins*, 372 Ga. App. 70, 73 (903 SE2d 957) (2024).

[11] Compare id. at 74 (explaining that parking directly outside a large glass window and having car keys in plain view gave rise to a fact question as to whether the restaurant knew the patron would soon drive).

As evidence that GATA's knew McLendon was soon to drive, the plaintiffs point to two things: a social media post encouraging people to "Come get drunk and give us all your money!"; and a policy by GATA's stating that GATA's staff "were taught, no exceptions, to assume that everyone they were trying to serve that night was going to drive in the near future." With respect to the social media post, despite its hyperbole, it made no reference to driving and is not relevant to knowledge on the part of GATA's regarding McLendon's use of a car.

With respect to GATA's policy of assuming that patrons would drive, it also does not bear on any facts observable by GATA's that would be relevant to what it actually knew or should have known about McLendon's decision to drive after he was transported home by his designated driver. The policy does not alter the undisputed evidence that McLendon drove neither to nor from GATA's and that he had no vehicle available to him at GATA's. Even if GATA's had inquired as to whether he intended to drive himself home, which it was not legally required to do,[12] it would have been apparent that McLendon had a designated driver throughout his visit to the bar.

---

[12] See *Monterrey Mex, Inc.*, 372 Ga. App. at 73-74.

In short, "[GATA's] policy cannot supplant the statutory requirement that the defendant have knowledge that the person will soon be driving when served his last drink."[13] In light of the undisputed evidence that McLendon consistently used a designated driver to and from GATA's, and in light of the absence of evidence that GATA's knew or should have known that McLendon would decide to drive to Smith's sometime later after he had been cut off and safely driven home, the trial court erred by denying summary judgment to GATA's.

2. GATA's also contends that the trial court erred to the extent that any claims remain against it. Although the trial court's summary judgment order is not clear on this point,[14] "[a] cause of action under OCGA § 51-1-40 (b) is an injured person's exclusive remedy for seeking to impose liability on a provider of alcohol for damages caused by a driver who consumed the alcohol."[15] In light of our holding in Division 1,

---

[13] *Becks v. Pierce*, 282 Ga. App. 229, 234 (1) (638 SE2d 390) (2006), citing *Sugarloaf Café v. Willbanks*, 279 Ga. 255, 256 (612 SE2d 279) (2005).

[14] The trial court entered an earlier order denying GATA's motion to dismiss. That order stated that the claims fell "solely under" the Dram Shop Act and noted that the Dram Shop Act is the exclusive remedy for the injuries alleged here.

[15] *Shin v. Estate of Camacho*, 302 Ga. App. 243, 245 (1) (302 SE2d 243) (2010).

no claims remain against GATA's based on its alleged liability for serving McLendon alcohol on the night in question.

3. GATA's remaining enumeration, regarding the timeliness of Dock's wrongful death claim,[16] is moot.

*Judgments reversed in Case No. A24A1575 and Case No. A24A1589. Hodges and Watkins, JJ., concur.*

---

[16] See generally *Hicks v. Universal Health Svcs., Inc.*, 364 Ga. App. 769, 776 (1) (874 SE2d 877) (2022) (holding that the tolling provision of OCGA § 9-3-99 does not apply to claims brought under the wrongful death statute).